97 F.3d 319
 113 Ed. Law Rep. 79, 96 Cal. Daily Op. Serv. 7082,
96 Daily Journal D.A.R. 11,602
 John RANDOLPH; Johanne Randolph, Plaintiffs-Appellees,
v.
BUDGET RENT-A-CAR, Defendant,
and
Saudi Arabian Airlines, Defendant-Appellant.
John RANDOLPH; Johanne Randolph, Plaintiffs-Appellees,
v.
AUTOMATED TRANSPORTATION, INC., dba, Budget Rent-A-Car
("Budget"), Defendant-Appellant,
and
Saudi Arabian Airlines, Defendant.
 Nos. 95-55402, 95-55465.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 6, 1996.
Decided Sept. 23, 1996.
 
 Honey Kessler Amado, Beverly Hills, California; Edward J. Horowitz, Los Angeles, California, for Plaintiffs-Appellees.
 Stephen T. Swanson, Arter & Hadden, Los Angeles, California; Jay T. Rubin, Brumer, Rubin & Weston, Los Angeles, California; Henry J. Oechler, Jr., Chadbourne & Parke, Los Angeles, California, for Defendants-Appellants.
 Appeals from the United States District Court for the Central District of California, A. Andrew Hauk, District Judge, Presiding. D.C. No. CV-93-05087-AAH.
 Before: D.W. NELSON, T.G. NELSON and THOMAS, Circuit Judges.
 OPINION
 THOMAS, Circuit Judge:
 
 
 1
 This case presents the question of whether an instrumentality of a foreign nation may be held liable for negligent torts committed by a scholarship student trainee in the United States. We hold that the Foreign Sovereign Immunities Act precludes federal jurisdiction for such an action and reverse the district court's judgment against Saudi Arabian Airlines ("Saudia").
 
 I. Facts and Procedural History
 
 2
 Fahad Abdullah Maghrabi (Maghrabi) is a subject of the Kingdom of Saudi Arabia who received a scholarship from an ongoing Saudia training program to study English and aircraft maintenance in the United States. Saudia provided Maghrabi with money for various living expenses, including clothing, medical and dental insurance, and books and tools needed for school. Saudia did not withhold taxes from any of the payments it made to Maghrabi as it normally does for its U.S. employees. Maghrabi was not promised he would be employed by Saudia after finishing his studies in the United States. Rather, he would be eligible to be considered for employment only after successfully completing additional training in Saudi Arabia.
 
 
 3
 Maghrabi signed a "Personal Responsibility" statement as a condition to participating in the training program which reads as follows:
 
 
 4
 I, the undersigned, understand that while I am in the United States as a student, I am solely responsible for my actions. If I intend to drive while in the United States, I will obtain a valid driver's license for the State in which I reside and will acquire sufficient insurance for protection against personal liability and property damage.
 
 
 5
 I understand that Saudia's sole interest in my activities in the United States is to have me meet the academic standards of my school and that Saudia does not supervise or control my personal conduct while in the United States. I further understand that my personal conduct is my own responsibility and that failure to conduct myself properly may be considered by Saudia in any subsequent offer of employment.
 
 
 6
 I further understand that the choice of whether to purchase or rent any vehicle is entirely up to me and that I am solely responsible for the costs of such vehicle, including the purchase price, rental and any insurance I may be required to carry.
 
 
 7
 Maghrabi studied English at Northrop University in Santa Monica, California from June 1990 to September 1991. He then moved to San Antonio, Texas, where he studied airframe and power mechanics at the Hallmark Institute of Technology, graduating on January 15, 1993. After graduation but before his scheduled return to Saudi Arabia on February 4, 1993, Maghrabi personally purchased a round-trip ticket from San Antonio to Los Angeles.
 
 
 8
 Saudia employees, unlike student trainees, are eligible for discounted travel on U.S. airlines. Maghrabi received neither reimbursement nor discount for his air travel from Saudia. He flew to Los Angeles on January 22, 1993 and personally rented a car from Budget. On January 26, 1993, in Malibu, California, Maghrabi negligently crashed his rented automobile into John Randolph's motorcycle, injuring his knee, left hand and pelvis.
 
 
 9
 John and Johanne Randolph filed this action against Maghrabi, Saudia, and Budget in Los Angeles Superior Court to recover damages for John Randolph's injuries and Johanne Randolph's loss of consortium. Saudia, a corporation wholly owned by the Saudi Arabian government, removed the action to federal district court pursuant to 28 U.S.C. § 1441(d) and asserted the Foreign Sovereign Immunities Act as a defense.
 
 
 10
 The district court denied Saudia's and granted Randolph's motion for summary judgment, ruling as a matter of law that Maghrabi was a Saudia employee acting within the scope of his employment at the time of the accident.
 
 
 11
 After a bench trial on damages, the district court entered a judgment of $914,253.83 against Saudia and $30,000 against Budget Rent-A-Car ("Budget"). Both Budget and Saudia appealed.
 
 
 12
 II. Jurisdiction Under the Foreign Sovereign Immunities Act
 
 
 13
 The threshold issue in this case is whether jurisdiction exists. Although neither party challenged the district court's jurisdiction on appeal, we are obliged to raise sua sponte issues concerning district courts' subject matter jurisdiction. Benavidez v. Eu, 34 F.3d 825, 830 (9th Cir.1994). This examination is particularly important in appeals examining the liability of foreign governments and their instrumentalities. Security Pac. Nat'l Bank v. Derderian, 872 F.2d 281, 283 (9th Cir.1989).
 
 
 14
 The Foreign Sovereign Immunities Act ("FSIA") is the exclusive basis for federal jurisdiction over a suit involving an agency or instrumentality of a foreign state. Export Group v. Reef Industries, 54 F.3d 1466, 1469 (9th Cir.1995). Federal jurisdiction does not attach until it is determined that the foreign sovereign lacks immunity under the provisions of the FSIA. Security Pac. Nat'l Bank, 872 F.2d at 283. As a question of law, we review the existence of subject matter jurisdiction under the FSIA de novo. Export Group, 54 F.3d at 1469. The district court's findings of fact relevant to its determination of subject matter jurisdiction must be accepted unless clearly erroneous. Wang v. Reno, 81 F.3d 808, 813 (9th Cir.1996).
 
 
 15
 The FSIA creates a statutory presumption that a foreign state is immune from suit unless one of the exceptions to immunity enumerated in 28 U.S.C. §§ 1605 to 1607 applies. 28 U.S.C. § 1604. Once a plaintiff offers evidence that an exception to immunity applies, the defendant bears the burden of proving by a preponderance of the evidence that the exception does not apply. Siderman de Blake v. Republic of Argentina, 965 F.2d 699, 707-08 (9th Cir.1992), cert. denied, 507 U.S. 1017, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993).
 
 
 16
 Under the FSIA, an "agency or instrumentality of a foreign state" includes a corporation wholly owned by a foreign state, such as Saudia. 28 U.S.C. § 1603(b). Thus, Saudia is immune from suit unless a statutory exception exists.
 
 
 17
 A. The Commercial Activity Exception.
 
 
 18
 The district court exercised jurisdiction under the FSIA "commercial activity" exception contained in 28 U.S.C. § 1605(a)(2), which provides that a foreign sovereign is not immune to suits:
 
 
 19
 in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.
 
 
 20
 The commercial activity exception only applies when "the particular conduct giving rise to the claim in question actually constitutes or is in connection with commercial activity." Joseph v. Office of Consulate Gen. of Nig., 830 F.2d 1018, 1023 (9th Cir.1987), cert. denied, 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988) (quoting Arango v. Guzman Travel Advisors Corp., 621 F.2d 1371, 1379 (5th Cir.1980)). The FSIA requires courts to evaluate the nature rather than the purpose of the conduct in question. Id. Not only must the act in question be transactionally based, but the sovereign must be acting as a market participant, rather than a market regulator. Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614, 112 S.Ct. 2160, 2166, 119 L.Ed.2d 394 (1992). The conduct involved here was not founded upon commerce, nor was it transactional in nature. Plaintiffs do not allege commercial loss. Rather, plaintiffs' personal injury lawsuit sounds in tort and centers on the non-commercial negligence of a purported employee. Because the questioned activity is non-business in nature, the commercial activity exception does not apply.
 
 
 21
 In addition, the plaintiff's cause of action must arise from the defendant's commercial activity in the United States. Gould, Inc. v. Mitsui Mining & Smelting Co., 947 F.2d 218, 221 (6th Cir.1991), cert. dismissed, 503 U.S. 978, 112 S.Ct. 1657, 118 L.Ed.2d 317 (1992). In other words, not only must the activity be commercial in nature, but the commercial activity must cause the harm alleged. In determining whether this required nexus has been established, the courts focus only on those specific acts that form the basis of the lawsuit. Joseph, 830 F.2d at 1023.
 
 
 22
 Here, a student trainee on a Saudia scholarship took a trip away from his Texas school to California at his own expense. While there, he negligently drove a privately-rented vehicle and injured a motorcyclist. The specific acts of which plaintiff complains did not arise out of Saudia's commercial activity in the United States. Accordingly, even though Saudia did not raise this issue either in district court or on appeal, we find that the district court clearly erred in exercising jurisdiction under 28 U.S.C. § 1605(a)(2).
 
 
 23
 B. The Tortious Activity Exception to the FSIA.
 
 1. General Principles
 
 24
 The district court should have analyzed jurisdiction under 28 U.S.C. § 1605(a)(5), the tortious activity exception to the FSIA. Indeed, the primary purpose of this exception is to address incidents such as the one at bar--traffic accidents caused by employees acting within the scope of their employment with foreign nations or their instrumentalities. H.R.Rep. No. 1487, 94th Cong., 2nd Sess. 21 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6620. The tortious activity exception provides jurisdiction over tort actions:
 
 
 25
 in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment....
 
 
 26
 28 U.S.C. § 1605(a)(5).
 
 
 27
 In order to find that a foreign sovereign can be sued under the tortious activity exception, the court must find: (1) that the tortious acts of individual employees of the sovereign were undertaken while in the scope of employment, and (2) that the claim is not based upon the exercise or failure to exercise a discretionary function. Joseph, 830 F.2d at 1025. Because this case does not involve a discretionary function, only employment and scope of employment issues are in question.
 
 
 28
 Although the district court did not examine jurisdiction under the tortious activity exception, the cross-motions for summary judgment involved whether Maghrabi was a Saudia employee acting within the scope of his employment--the same inquiry necessary to determine the existence of jurisdiction under this exception.
 
 
 29
 We review a district court's grant of summary judgment de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).
 
 2. Employee Relationship
 
 30
 The question of whether Maghrabi was a Saudia employee is governed by California law. 28 U.S.C. § 1606; First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 622 n. 11, 103 S.Ct. 2591, 2598 n. 11, 77 L.Ed.2d 46 (1983) ("where state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances"). Given that the facts surrounding Saudia's support of Maghrabi during his residence in the United States are undisputed, whether Maghrabi is an employee under California law is a question of law reviewed de novo. See Donovan v. American Airlines, Inc., 686 F.2d 267, 270 n. 4 (5th Cir.1982).
 
 
 31
 When interpreting state law in the absence of state court decisions on point, we must predict how the highest state court would decide the issue. Arizona Elec. Power Coop., Inc. v. Berkeley, 59 F.3d 988, 991 (9th Cir.1995).
 
 
 32
 The California Labor Code defines an employee as one engaged "to do something for the benefit of the employer or a third person." Cal. Lab.Code § 2750 (West 1989). Under California law, whether a person is an employee depends on the degree of control the purported employer has a right to exercise over that person. Burlingham v. Gray, 22 Cal.2d 87, 99, 137 P.2d 9, 15 (1943) (en banc). Where the purported employer has the right to control the mode and manner of doing work, an employer-employee relationship exists. Id. at 99-100, 137 P.2d at 15-16.
 
 
 33
 At the time of the accident, Maghrabi was a "student trainee" attending American schools on scholarship. Maghrabi lived in the United States for over two and one-half years, taking classes to develop the general skills needed to work in aircraft maintenance. Saudia paid his tuition at the schools he attended to study English and aircraft maintenance. Saudia provided Maghrabi a living allowance, as well as money for clothing, books, tools, and medical and dental insurance. Maghrabi also received bonuses and penalties based upon his academic performance. Before he could even be considered for future employment with Saudia, Maghrabi had to return to Saudi Arabia and successfully complete additional training. Importantly, the initiation of Maghrabi's relationship with Saudia did not displace work from existing Saudia employees, and his activities in the United States did not aid Saudia in its daily operations or confer an immediate benefit on Saudia. There is no evidence in the record that Saudia had guaranteed to hire him after his training or that Maghrabi was obligated to accept a Saudia job offer if tendered one. Similarly, there is no support in the record for the district court's conclusion that he was "on a mission" for Saudi Arabia.
 
 
 34
 Maghrabi was not engaged "to do something for the benefit of" Saudia. Cal. Lab.Code § 2750 (West 1989). Rather, Maghrabi was learning English and aircraft maintenance for his own benefit. While it is true that Saudia may ultimately benefit from training students like Maghrabi, this benefit is not the sort of benefit normally engendered in an employment contract. See Blackman v. Great Am. First Sav. Bank, 233 Cal.App.3d 598, 604, 284 Cal.Rptr. 491, 494 (1991) (employee not acting within the scope of employment when driving to classes paid for by employer as part of an ongoing educational assistance program because the classes did not significantly benefit employer). In fact, Saudia's scholarship program inherently involves the risk that Saudia will lose its investment if the student fails to meet Saudia's employment standards.
 
 
 35
 Several courts have held that student trainees are not "employees" under the Fair Labor Standards Act (FLSA) because the organization training them receives no immediate benefit from their training, even though the trainees form a labor pool from which the organization can fulfill its hiring needs. See Walling v. Portland Terminal Co., 330 U.S. 148, 152-53, 67 S.Ct. 639, 641-42, 91 L.Ed. 809 (1947) (brakemen trainees not "employees" under FLSA because railroad receives no "immediate advantage" from their training); Donovan v. Trans World Airlines, Inc., 726 F.2d 415, 416-17 (8th Cir.1984) (airline trainees not "employees" under FLSA because airline receives no "immediate benefit" from their training); American Airlines, 686 F.2d at 271-72 (same); see also Reich v. Parker Fire Protection Dist., 992 F.2d 1023, 1025-29 (10th Cir.1993) (fire fighter trainees are not "employees" under FLSA during time in training at the fire-fighting academy); Ballou v. General Elec. Co., 433 F.2d 109, 112 (1st Cir.1970) ("According to [Portland Terminal ], if G.E .... provided only training programs which [appellants] were required to complete successfully before they could be employed ..., appellants [would not be employees].").[1]
 
 
 36
 Scholarship sponsors often exercise a certain degree of control over the students who receive their scholarships, including terminating the scholarship if the student's grades fall below a designated level or if the student acts in derogation of other scholarship terms. However, imposition of scholarship conditions is far from the direction and supervision found in the traditional employment setting. The theory of respondeat superior would have to be stretched beyond recognition to hold scholarship sponsors vicariously liable for the torts of their beneficiaries. Such a result would be contrary to analogous California law, federal law, public policy and common sense. We do not believe the California Supreme Court would so hold.
 
 
 37
 Certainly, in some circumstances student trainees may truly be employees. That is not the case here. Under California law as applied to the facts before us, Maghrabi was not a Saudia employee at the time of the accident. The district court erred in so finding.
 
 3. Scope of Employment
 
 38
 Even if Maghrabi could be considered an employee, the record fails to show he was acting within the scope of his employment at the time of the accident. The question of whether Maghrabi was acting within the scope of employment is governed by California law. 28 U.S.C. § 1606; First Nat'l City Bank, 462 U.S. at 622 n. 11, 103 S.Ct. at 2598 n. 11. When the facts are undisputed, as here, the issue of scope of employment is a question of law subject to de novo review. Perez v. Van Groningen & Sons, Inc., 41 Cal.3d 962, 968, 227 Cal.Rptr. 106, 109, 719 P.2d 676, 679 (1986).
 
 
 39
 Under the California doctrine of respondeat superior, an employer may be held liable for the tortious acts of its employees when they are acting within the scope of their employment. Cal. Civ.Code § 2338 (West 1985); Mary M. v. City of Los Angeles, 54 Cal.3d 202, 208, 285 Cal.Rptr. 99, 101, 814 P.2d 1341, 1343 (1991) (en banc). An employee is acting within the scope of his or her employment if either one of two conditions is met: (1) the act performed was either required or incident to her duties, or (2) the employee's misconduct could be reasonably foreseen by the employer. Clark Equipment Co. v. Wheat, 92 Cal.App.3d 503, 520, 154 Cal.Rptr. 874, 882 (1979); see also Lisa M. v. Henry Mayo Newhall Memorial Hosp., 12 Cal.4th 291, 296-99, 48 Cal.Rptr.2d 510, 512-15, 907 P.2d 358 (1995) (reviewing California law of respondeat superior).
 
 
 40
 The first condition is satisfied if the tort is engendered by or arises from the work. Id. at 298, 48 Cal.Rptr.2d at 514, 907 P.2d at 362. The employee need not have intended to further the employer's interests. Id. at 297, 48 Cal.Rptr.2d at 513, 907 P.2d at 361. To meet the second condition, the tort must be "in a general way, foreseeable from the employee's duties." Id. at 299, 48 Cal.Rptr.2d at 514, 907 P.2d at 362; see also Rodgers v. Kemper Constr. Co., 50 Cal.App.3d 608, 619, 124 Cal.Rptr. 143, 149 (1975) (" 'forseeability' ... means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business"). "In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one that may fairly be regarded as typical of or broadly incidental to the enterprise undertaken by the employer." Perez, 41 Cal.3d at 968, 227 Cal.Rptr. at 108-09, 719 P.2d at 678 (quoting Rodgers, 50 Cal.App.3d at 619, 124 Cal.Rptr. at 149) (citation omitted). Respondeat superior liability should apply only to the types of injuries that are as a practical matter certain to occur in the conduct of the employer's enterprise. Lisa M., 12 Cal.4th at 299, 48 Cal.Rptr.2d at 514, 907 P.2d at 362.
 
 
 41
 The district court seems to have concluded that because Maghrabi was in the United States as part of a Saudia training program, Saudia should be liable for all his foreseeable torts, and it was foreseeable he would get into a traffic accident while in the United States. This is not the law. If Maghrabi was a Saudia employee, he must have been acting within the scope of his employment at the time of the accident for Saudia to be vicariously liable for his negligence. Where the employee's conduct has substantially deviated from his or her duties, it is unjust to hold the employer liable. Le Elder v. Rice, 21 Cal.App.4th 1604, 1607, 26 Cal.Rptr.2d 749, 751 (1994). If the main purpose of the injury-producing activity was the pursuit of the employee's personal ends, the employer is not liable. Id. Under the doctrine of respondeat superior, the plaintiff bears the burden of proving the employee's negligent act was committed within the scope of her employment. Perez, 41 Cal.3d at 968, 227 Cal.Rptr. at 109, 719 P.2d at 679. Randolph did not produce any evidence of the purpose of Maghrabi's trip to Malibu and conceded that Maghrabi personally paid for all of his air and ground transportation on the California trip. Randolph nevertheless attempts to establish respondeat superior liability by resorting to two workers' compensation theories: the "commercial traveler" rule and the "bunkhouse" rule.
 
 
 42
 Randolph argues that California courts frequently rely upon workers' compensation cases in tort cases. See id. at 967-68, 227 Cal.Rptr. at 108, 719 P.2d at 678 ("In some respects, the rationale underlying respondeat superior is similar to that underlying the Workers' Compensation Act."); Rodgers, 50 Cal.App.3d at 619, 124 Cal.Rptr. at 149 (test for respondeat superior is "closely related to the test applied in workers' compensation cases"). Saudia responds that California courts have often distinguished between the two areas of law because of their different policy underpinnings. See Perez, 41 Cal.3d at 967 n. 2, 227 Cal.Rptr. at 108 n. 2, 719 P.2d at 678 n. 2 (tests in respondeat superior and workers' compensation cases are not identical; workers' compensation cases helpful but not binding in respondeat superior cases); Church v. Arko, 75 Cal.App.3d 291, 298-99, 142 Cal.Rptr. 92, 96 (1977) ("There is a marked conceptual difference in the rationale imposing liability on the employer under workmen's compensation laws" and "under the doctrine of respondeat superior.").
 
 
 43
 Without expressing any opinion whether the analogy to workers' compensation is appropriate in this case, we find that these doctrines would not support Randolph's position even if they were to apply. The "commercial traveler" rule holds that "[e]mployees whose work entails travel away from the employer's premises are ... within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown." IBM Corp. v. Workers' Compensation Appeals Bd., 77 Cal.App.3d 279, 282, 142 Cal.Rptr. 543, 544 (1978). In IBM, a California IBM employee on a business trip to Chicago died in a car accident while returning to Chicago from visiting relatives in Wisconsin. Id. at 281, 142 Cal.Rptr. at 544. The court held that the "commercial traveler" rule applied because the trip held a connection to the employee's work sufficient to mandate the award of workers' compensation benefits: there was evidence the employee's supervisor encouraged the trip, and the trip "was not of such a duration or nature as to remove it from the category of the type of leisure time activity normally incident to an out-of-town temporary assignment." Id. at 283, 142 Cal.Rptr. at 545.
 
 
 44
 Randolph argues the IBM case applies in this case where Maghrabi traveled to the Los Angeles area, "perhaps to visit friends," before returning to Saudi Arabia after an extended stay in the United States. However, in contrast to IBM, Maghrabi was not on a brief assignment away from his home: he had lived in America for over two and one-half years. In further contrast, there is no evidence in the record that Maghrabi ever sought Saudia's permission for his trip or that Saudia even knew about the trip beforehand.
 
 
 45
 Even with the "commercial traveler" rule, the trip still must have some connection to work. The rule is generally applicable "only in those cases in which the employee's traveling was a part of the employee's work, that is, a part of the service to be performed by the employee for the employer," such as a traveling salesman. Hartford Accident & Indem. Co. v. Workers' Compensation Appeals Bd., 132 Cal.App.3d 796, 805, 183 Cal.Rptr. 440, 445 (1982). The rule is not intended to hold an employer liable for all its employees' torts while on extended overseas assignment.
 
 
 46
 Randolph also resorts to the "bunkhouse" rule. Under this rule, an employee who lives on his employer's premises is acting within the scope of his employment even while engaged in leisure activity if he is making a reasonable use of the employer's premises. Argonaut Ins. Co. v. Workmen's Compensation Appeals Bd., 247 Cal.App.2d 669, 678, 55 Cal.Rptr. 810, 816 (1967). Randolph argues that "for the purposes of liability, the United States was [Maghrabi's] required housing" so "[t]here was no time that Saudia was not liable for Maghrabi's foreseeable conduct." Randolph also argues that because Maghrabi came to America in part to study English, "his presence in the United States was in the course of his employment ... at all times." These arguments stretch the bounds of vicarious liability to manifestly unreasonable limits. Further, California has specifically rejected 24-hour liability for the conduct of employees on call for 24 hours a day. Le Elder, 21 Cal.App.4th at 1607, 26 Cal.Rptr.2d at 751.
 
 
 47
 As Saudia correctly argues, Randolph failed to carry his burden of proof to establish Maghrabi was acting in the course of his employment at the time of the accident. All of the evidence in the record supports the opposite conclusion. The district court erred in granting Randolph summary judgment.
 
 
 48
 4. Application of the Tortious Activity Exception
 
 
 49
 Randolph failed to show that Maghrabi was a Saudia employee acting within the course of his employment when he negligently injured Randolph. Thus, the requirements of tortious activity exception to the FSIA were not met.
 
 
 50
 C. Conclusion.
 
 
 51
 As a matter of law, neither the commercial activity nor the tortious activity exceptions apply to this case. Thus, Saudia is immune from suit under the FSIA. The district court was without jurisdiction and erred in entering judgment against Saudia. Because determination of these issues resolves Saudia's liability, we need not discuss the other issues raised by Saudia on appeal.
 
 III. Claims against Budget
 
 52
 In considering the Randolph's separate claim against Budget, the district court held that Cal. Veh.Code § 17151(a) (West 1971), which limits recovery against the owner of an automobile to $15,000 per person injured as a result of an accident, did not prohibit Johanne Randolph's separate action against Budget. The court reasoned that her loss of consortium claim constitutes a separate injury arising from the accident sufficient for her to recover under § 17151(a) apart from her husband's recovery under that section. On that basis, the court entered judgment against Budget for $30,000.
 
 
 53
 Original jurisdiction did not lie in federal court for this claim because Budget's maximum liability ($30,000) failed to satisfy the $50,000 jurisdictional requirement of 28 U.S.C. § 1332(a). A district court may exercise supplemental jurisdiction over claims which are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III...." 28 U.S.C. § 1367. However, when original jurisdiction does not exist for the principal claim, federal courts may not exercise supplemental jurisdiction over the remaining pendent claims. Simply put, failure of original jurisdiction precludes application of supplemental jurisdiction.
 
 
 54
 Where a Court of Appeals finds a defendant to be an immune sovereign under the FSIA, all pendent state claims must be either dismissed or remanded to state court. Security Pac. Nat'l Bank, 872 F.2d at 287. To hold otherwise would be in derogation of Article III's "case and controversy" requirement. U.S. Const. art. III, § 2. Because this case was removed from state court by Saudia, the Randolphs' claims against Budget must be remanded to state court.
 
 IV. Conclusion
 
 55
 Because neither the commercial activity nor the tortious activity exception to the FSIA applies to this case, no federal jurisdiction exists for the Randolphs' claims against Saudia. Because there is no cause of action giving rise to original federal jurisdiction, all other claims must be remanded to state court. Therefore, the judgment of the district court against Saudia and Budget is reversed. The claims against Saudia are dismissed. We remand all remaining claims to the district court with instructions to remand the remaining causes of action to the Los Angeles Superior Court.
 
 
 
 [1]
 The definition of the term "employee" in the FLSA is extremely broad. See American Airlines, 686 F.2d at 271 ("The Fair Labor Standards Act defines 'employee' simply as 'any individual employed by an employer,' and 'employ' as including 'to suffer or permit to work.' 29 U.S.C. §§ 203(e)(1), 203(g). Thus, the term 'employee' is used in the broadest sense 'ever ... included in any one act.' ") (citations omitted). The fact that several federal cases have found individuals situated similarly to Maghrabi not to be "employees" under this broad definition helps in determining whether Maghrabi should be considered an "employee" under California law