Curtis A. **PHANEUF**, Plaintiff–Appellee,

v.

**REPUBLIC OF INDONESIA, a Foreign State; National Defense Security Council of the Republic of Indonesia—Jakarta, an Agency or Instrumentality of a Foreign State; H.A. Chalid Mawardi, Defendants–Appellants.**

No. 95–17131.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1996.

Decided Feb. 7, 1997.

Carolyn B. Lamm, Christopher M. Curran, Francis A. Vasquez, Jr., White & Case, Washington, DC, Janice A. Wezelman, Miller, Pitt & McAnally, P.C., Tucson, AZ, for defendants-appellants Republic of Indonesia, National Defense Security Council of the Republic of Indonesia and H.A. Chalid Mawardi.

William B. Blaser, Tucson, AZ, for plaintiff-appellee.

Before: RONEY,* Senior Circuit Judge, BEEZER and TROTT, Circuit Judges.

BEEZER, Circuit Judge:

 The Republic of Indonesia, the National Defense Security Council of the Republic of Indonesia and H.A. Chalid Mawardi (collectively "defendants") appeal the district court's order denying the defendants' motion to dismiss on the basis of sovereign immunity and for lack of venue. We have jurisdiction over the district court's denial of the motion to dismiss pursuant to the collateral order doctrine. *Schoenberg v. Exportadora de Sal, S.A. de C.V.,* 930 F.2d 777, 779 (9th Cir.1991), *cert. denied,* —— U.S. ——, 115 S.Ct. 581, 130 L.Ed.2d 496 (1994). Jurisdiction does not exist to review the district court's refusal to dismiss for lack of venue. *American Concrete Agric. Pipe Ass'n v. No–Joint Concrete Pipe Co.,* 331 F.2d 706, 709 (9th Cir.1964). We reverse and remand.

I

Plaintiff Curtis A. Phaneuf holds several promissory notes allegedly issued by the National Defense Security Council of the Republic of Indonesia ("NDSC"). These notes are part of approximately 505 promissory notes created by several then-members of the NDSC and valued at over three billion U.S. dollars ("NDSC notes"). The notes bear the signatures of two NDSC members and the NDSC crest. The principal maker of the notes, Ibnu Hartomo, traded the "NDSC notes" for promissory notes issued by Hassan Zubaidi, a Syrian based financier. In August 1985, defendant Mawardi, then Indonesia's ambassador to Syria, participated in a signing ceremony in Damascus. At the ceremony Mawardi purportedly confirmed that Hartomo represented the Indonesian government and that the "NDSC notes" were

---

* The Honorable Paul H. Roney, Senior Circuit Judge for the Eleventh Circuit sitting by designa-

"Official/Governmental." Zubaidi's notes were later discovered to be worthless.

The Republic of Indonesia claims that it did not know about the "NDSC notes" until late in 1985, at which time it promptly determined that these notes were unauthorized and invalid under Indonesian law. In January 1986, the NDSC's Secretary General informed Bank Indonesia that neither the NDSC nor any of its officials had authority to issue promissory notes and that the "NDSC notes" were invalid. Bank Indonesia then sent communications to financial institutions advising that Indonesia had detected unauthorized promissory notes allegedly issued by the NDSC. In April 1987, the NDSC issued a press release which disavowed NDSC responsibility for the notes, stating that responsibility lay with the persons who signed the notes. Bank Indonesia has continuously refused to honor the notes.

Phaneuf brought this action to enforce payment on the notes in his possession. The defendants moved to dismiss based on lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"). The district court denied the defendants' motion to dismiss, stating that defendants had not established a prima facie case of immunity under the FSIA.

Defendants contend that the district court erred in denying their motion to dismiss because: (1) they established a prima facie case of immunity under the FSIA; (2) the commercial activity exception to the FSIA does not apply to Phaneuf's claim; and (3) venue is improper in the District of Arizona.

II

 The FSIA is the sole basis of subject matter jurisdiction over suits involving foreign states and their agencies and instrumentalities. *Randolph v. Budget Rent–A–Car,* 97 F.3d 319, 323 (9th Cir.1996). Under the FSIA, foreign states are immune from suit unless one of the enumerated exceptions to the Act applies. 28 U.S.C. §§ 1330, 1604–05. The existence of subject matter jurisdiction.

tion.

tion under the FSIA is a question of law reviewed de novo. *Randolph,* 97 F.3d at 323.

### III

 The district court held that it currently had subject matter jurisdiction, but stated that it might revisit the issue later in the trial based on further discovery. Subject matter jurisdiction under the FSIA, however, must be decided before the suit can proceed. *Security Pac. Nat'l Bank v. Derderian,* 872 F.2d 281, 283–84 (9th Cir.1989). Immunity under the FSIA is not only immunity from liability, but immunity from suit. *Compania Mexicana de Aviacion v. United States Dist. Court,* 859 F.2d 1354, 1358 (9th Cir.1988). The district court improvidently postponed its final determination of subject matter jurisdiction under the FSIA.

### IV

 The district court denied the defendants' motion to dismiss holding that the defendants had not established a prima facie case of immunity. The district court relied on a footnote in *Siderman de Blake v. Republic of Argentina* in determining the prima facie requirements for sovereign immunity. *See* 965 F.2d 699, 708 n. 9 (9th Cir.1992) (citing *Meadows v. Dominican Republic,* 817 F.2d 517, 522 (9th Cir.), *cert. denied,* 484 U.S. 976, 108 S.Ct. 486, 487, 98 L.Ed.2d 485 (1987)), *cert. denied,* 507 U.S. 1017, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993). Footnote nine of *Siderman de Blake* states:

> Where .... the plaintiff alleges in his complaint that his claim is based on a foreign state's strictly commercial acts, the defendant must establish a prima facie case that it is a sovereign state and that the plaintiff's claim arises out of a public act. This proof establishes a presumption that the foreign state is protected by immunity.

*Id.*

In its order, the district court stated that defendants failed to show that the "acts complained of arise out of a public act." Defendants had argued to the district court that the commercial activity exception to the FSIA, 28 U.S.C. § 1605(a)(2), did not apply because they had not participated in the issu-

ance of the promissory notes. The district court concluded that the defendants could not "consistently argue that they are entitled to immunity (as a foreign sovereign for their sovereign acts) [under] the FSIA and, at the same time, argue that the acts alleged were not sovereign so as to defeat its exceptions."

We, however, have never required a defendant to establish that a plaintiff's claim arose from a public act. We did not engage in a public act inquiry in either *Siderman de Blake* or *Meadows v. Dominican Republic,* upon which *Siderman de Blake* relies, because neither case concerned whether the defendants had demonstrated a prima facie case of immunity. *Siderman de Blake,* 965 F.2d at 707–08 (discussing whether plaintiffs met their burden of production that exceptions to the FSIA applied); *Meadows,* 817 F.2d at 523 (holding that the defendants had not met their final burden of persuasion that the commercial activity exception did not apply). The suggestion in *Siderman de Blake* and *Meadows* that the FSIA prima facie case includes a public act requirement is dicta, and as such holds no precedential value.

In other existing precedent, defendants have established their prima facie entitlements to sovereign immunity by proving only that they qualified as "foreign state[s]" under 28 U.S.C. § 1603(a)-(b). We did not require these defendants to demonstrate that the plaintiffs' claims arose from a public act. *Export Group v. Reef Indus.,* 54 F.3d 1466, 1470 (9th Cir.1995) (citing *Meadows,* 817 F.2d at 522–23); *Gates v. Victor Fine Foods,* 54 F.3d 1457, 1459–60 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 187, 133 L.Ed.2d 124 (1995); *cf. Randolph,* 97 F.3d at 324 (discussing the shifting of the burden of production under the FSIA without addressing a prima facie public act requirement and citing *Siderman de Blake,* 965 F.2d at 707–08).

Further, the FSIA dictates that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607." 28 U.S.C. § 1604; *see Compania Mexicana de Aviacion,* 859 F.2d at 1359 ("We lack both statutory subject matter and personal jurisdiction over any claim against a

foreign sovereign unless one of the Act's exceptions applies...."). Sections 1605 through 1607 of Title 28 outline the only exceptions to the Act. Requiring a foreign state to prove a public act conflicts with the plain language of the statute: a foreign state is immune from suit unless one of the enumerated exceptions applies. There is no exception for non-public acts.

The legislative history of the FSIA also does not compel the conclusion that a defendant must prove a public act to establish a prima facie case of immunity. The suggestion in *Meadows* of a public act requirement was based, in part, on a House Report which states:

> [T]he burden will remain on the foreign state to produce evidence in support of its claim of immunity. Thus, evidence must be produced to establish that a foreign state or one of its subdivisions, agencies or instrumentalities is the defendant in the suit and that the plaintiff's claim relates to a public act of the foreign state-that is, an act not within the exceptions in sections 1605–1607.

H.R.Rep. No. 1487, 94th Cong., 2d sess. This legislative history, however, clarifies only that the defendant bears the burden of establishing its immunity, including the burden of proof that no exception applies. It does not necessitate a prima facie showing of a public act. The phrase "public act" is used to describe acts that do not fall within the enumerated exceptions to the FSIA.

Moreover, requiring a prima facie showing of a public act would prevent the defendants here from asserting a valid argument against the application of the commercial activity exception. The language of the commercial activity exception requires not only that there be "commercial activity", but also that there be commercial activity "of the foreign state." 28 U.S.C. § 1605(a)(2). Defendants should be permitted to argue against the

application of the exception on the grounds that they did not act: that there was no "commercial activity *of the foreign state.*" *Id.* (emphasis added).

We conclude that the FSIA does not require the defendants to prove a public act to establish a prima facie case of immunity. Instead, they are entitled to a presumption of immunity if they are foreign states within the meaning of the Act. *Gates,* 54 F.3d at 1459–60; *Export Group,* 54 F.3d at 1470.

As conceded by Phaneuf, both Indonesia and the NDSC qualify as foreign states under the FSIA.[1] The district court erred in determining that the Republic of Indonesia and the NDSC had not established a prima facie case of sovereign immunity.

■ We consider Mawardi's entitlement to a presumption of immunity separately. The district court held that Mawardi was not entitled to a presumption of immunity because he, along with the other defendants, had failed to establish a public act. As discussed above, the district court erred in requiring the defendants to prove a public act. Nonetheless, Mawardi may not be entitled to a presumption of immunity if he was acting outside the scope of his official authority. In *Trajano v. Marcos (In re Estate of Ferdinand E. Marcos Human Rights Litig.),* we held that the FSIA applies to a foreign official acting in an official capacity, but does not apply to an official acting beyond the scope of the actor's authority. 978 F.2d 493, 497 (9th Cir. 1992) (citing *Chuidian v. Philippine Nat'l Bank,* 912 F.2d 1095, 1103–06 (9th Cir. 1990) (holding that government officials fall within the definition of an "agency or instrumentality of a foreign state")), *cert. denied,* 508 U.S. 972, 113 S.Ct. 2960, 125 L.Ed.2d 661 (1993). In *Trajano,* we defined "beyond the scope of the official's authority" to include anything the sovereign has not empowered the official to do. *Id.* Because the district

---

1. A "foreign state" includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). An "agency or instrumentality" of a foreign state is defined as an entity:
 (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof

... and (3) which is neither a citizen of a State of the United States ... nor created under the laws of any third country.
28 U.S.C. § 1603(b). The Republic of Indonesia is a foreign state and the NDSC meets the definition of an "agency or instrumentality" of a foreign state.

court did not make any factual findings as to either Mawardi's actions or the scope of his authority, we remand this issue to the district court. If the district court finds that Mawardi's actions were within the scope of his authority, then Mawardi is entitled to a presumption of immunity under the FSIA; if Mawardi acted without authority, the FSIA cannot shield him from suit in his individual capacity.[2]

## V

■ Because the defendants, with the exception of Mawardi, have established a prima facie case of immunity, the burden of production shifts to the plaintiff to offer evidence that an exception applies. *See Randolph,* 97 F.3d at 324. Phaneuf submitted affidavits and other evidence to support the theory that the NDSC members had either actual or apparent authority to issue the promissory notes. Phaneuf asserts that defendants' actions fall within the third clause of the commercial activity exception. That provision states that a foreign sovereign is not immune from jurisdiction when the action is based:

upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

■ Because Phaneuf offered evidence that the commercial activity exception applies, the defendants bear the burden of proving by a preponderance of the evidence that the exception does not apply. *See Randolph,* 97 F.3d at 324; *Joseph v. Office of Consulate General of Nigeria,* 830 F.2d 1018,

1021 (9th Cir.1987), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988).

■ The issuance of sovereign debt is a commercial act which falls within the exception claimed by Phaneuf. *Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 612–617, 112 S.Ct. 2160, 2165–68, 119 L.Ed.2d 394 (1992). Defendants concede this issue.

■ Defendants maintain, however, that the commercial activity exception does not apply because they are not responsible for the issuance of the notes. They contend there was no "commercial activity *of the foreign state.*" 28 U.S.C. § 1605(a)(2) (emphasis added). Defendants argue they are not bound by the actions of the former NDSC members or Ambassador Mawardi because these government officers exceeded the scope of their authority in issuing and certifying the validity of the notes. The question is whether an agent of a foreign state must have acted with *actual* authority to invoke the commercial activity exception against a foreign state, or whether *apparent* authority suffices.[3]

In interpreting the FSIA, we first look to the plain meaning of the language employed by Congress. *Straub v. A P Green, Inc.,* 38 F.3d 448, 452 (9th Cir.1994). The language of the commercial activity exception compels the conclusion that only evidence of actual authority can be used to invoke that exception. All three clauses of the exception require "a commercial activity *of the foreign state.*" 28 U.S.C. § 1605(a)(2) (emphasis added). "[C]ommercial activity *of the foreign state* " clearly entails commercial activity in which the foreign state engaged. Because a foreign state acts through its agents, an agent's deed which is based on the actual

---

2. Phaneuf is suing Mawardi in his official capacity and not as an individual.

3. We distinguish the issue here from the inquiry undertaken to determine whether an agency or instrumentality of a foreign state is the "alter ego" of the foreign state. *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 627–633, 103 S.Ct. 2591, 2600–03, 77 L.Ed.2d 46 (1983) *("Banec ");* *Gates,* 54 F.3d at 1460 n. 1. Normally, we accord a presumption of independence to an agency or instrumentality of the foreign state; this presumption can be overcome, however, when the

level of state control is such that the acts of the governmental agency are in effect the acts of the state. *Banec,* 462 U.S. at 629–34, 103 S.Ct. at 2601–04 (applying presumption in liability context); *Gates,* 54 F.3d at 1460 n. 1.

Our concern here, however, is not the level of control a foreign state must exercise over an agency before we will attribute the misdeeds of that agency to the foreign state. Rather, we focus on whether the action of an agent that exceeds the scope of his authority should be attributable to the foreign state.

authority of the foreign state constitutes activity "of the foreign state."

When an agent acts beyond the scope of his authority, however, that agent "is not doing business which the sovereign has empowered him to do." *Chuidian*, 912 F.2d at 1106 (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689, 69 S.Ct. 1457, 1461, 93 L.Ed. 1628 (1949)). If the foreign state has not empowered its agent to act, the agent's unauthorized act cannot be attributed to the foreign state; there is no "activity of the foreign state."

█ We assume that "the ordinary meaning of [the statutory] language accurately expresses the legislative purpose." *Export Group*, 54 F.3d at 1473 (internal quotations omitted). We are not to imply exceptions. *Id.* If Congress had intended the commercial activity exception to apply to an agent's acts committed without actual authority it could have so indicated in the language of the exception. Instead, the plain meaning of the language "commercial activity of the foreign state" illustrates that Congress intended for the exception to apply only in cases of actual authority.

Our holdings in *Chuidian* and *Trajano* support this conclusion. *Chuidian*, 912 F.2d at 1103, 1106; *Trajano*, 978 F.2d at 497–98. In *Chuidian* we held that an agent of a foreign state acting outside the scope of his authority is not entitled to immunity under the FSIA. 912 F.2d at 1106. A corollary to this principal must be that the foreign state retains its immunity when its agent acts outside the scope of his authority. " 'Where an officer's powers are limited ... his actions beyond those limitations are considered individual and not sovereign actions.' " *Id.* (quoting *Larson*, 337 U.S. at 689, 69 S.Ct. at 1461).

Further, in *Trajano* we held that the defendant was not entitled to immunity because the acts were taken without official mandate

and thus could not "have been acts of an agent or instrumentality of a foreign state within the meaning of the FSIA." 978 F.2d at 498. Therefore, unofficial acts are also not acts of a "foreign state." 28 U.S.C. § 1603(a) (defining "foreign state" to include an "agency or instrumentality of a foreign state"). The language "commercial activity of the foreign state" excludes an agent's unofficial acts, i.e., acts taken without actual authority.

Chuidian drew support for its conclusion by references to the sovereign immunity of the United States. *Chuidian*, 912 F.2d at 1101–02, 1106. Further comparison to United States immunity buttresses the reading of an actual authority requirement into the commercial activity exception of the FSIA. When dealing with a purported agent of the United States, the third party bears the risk that the agent is acting outside the scope of the agent's authority, *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947), even if the third party reasonably believes the agent has authority. *Bollow v. Federal Reserve Bank*, 650 F.2d 1093, 1100 (9th Cir.1981). Moreover, the government can be estopped from asserting immunity only when its agent has acted within the scope of authority. *Saulque v. United States*, 663 F.2d 968, 976 (9th Cir.1981). These precedents support the conclusion that evidence of apparent authority should not be sufficient to invoke the FSIA's commercial activity exception.

We hold that an agent must have acted with actual authority in order to invoke the commercial activity exception against a foreign state.[4] We express no opinion as to whether the issuers of the "NDSC notes" or Ambassador Mawardi acted with actual authority. We remand to the district court to determine whether the commercial activity exception applies to the defendants.

---

4. Our conclusion that the commercial activity exception may be invoked against a foreign state only when its agents have acted with actual authority contradicts a Second Circuit case, *First Fidelity Bank, N.A. v. Government of Antigua & Barbuda—Permanent Mission*, 877 F.2d 189 (2d Cir.1989). In that case the court instructed the district court to hold on remand that jurisdiction

existed over the foreign state if the district court found that the foreign state's ambassador acted with apparent authority. *Id.* at 194–96. The court, however, seems to have assumed the appropriateness of invoking the commercial activity exception based on apparent authority. The court gave no analysis or explanation of its statements regarding apparent authority.

## VI

Defendants also argue that venue is improper in the District of Arizona. Phaneuf claims venue under 28 U.S.C. § 1391(f)(1).[5] Although neither party disputes appellate jurisdiction over this issue, we consider our jurisdiction sua sponte. *Benavidez v. Eu*, 34 F.3d 825, 830 (1994).

In *American Concrete Agric. Pipe Ass'n v. No–Joint Concrete Pipe Co.*, we held that an order denying a motion to dismiss for want of venue is interlocutory and not appealable under 28 U.S.C. § 1291. 331 F.2d at 709. We do not have jurisdiction over the district court's order denying defendants' motion to dismiss for lack of venue.

REVERSED AND REMANDED.

---

**5.** Section 1391(f)(1) provides that venue is proper "in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of that of the action is situated."