George DALE, et al.   Plaintiffs

v.

Emilio COLAGIOVANNI,
et al.   Defendants

No.  CIV.A.3:01 CV 663BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

Sept. 22, 2004.

Charles Greg Copeland, Robert C. Richardson, Janet G. Arnold, Copeland, Cook, Taylor & Bush, Ridgeland, MS, Alan F. Curley, Cynthia H. Hyndman, Elizabeth J.

Hubertz, Robinson, Curley & Clayton, P.C., Chicago, IL, Scott B. Ostrow, Wyatt, Tarrant & Combs, Memphis, TN, William W. Gibson, J. Graham Matherne, Andrew B. Campbell, Wyatt, Tarrant & Combs, Nashville, TN, Douglas J. Schmidt, Patrick A. McInerney, Blackwell, Sanders, Peper, Martin, LLP, Kansas City, MO, Susan B. Loving, Lester, Loving & Davies, PC, Edmond, OK, Steve A. Uhrynowycz, Arkansas Insurance Department, Liquidation Division, Little Rock, AR, for George Dale, Commissioner of Insurance for the state of MS, in his official capacity as receiver of Franklin Protective Life Ins. Co., Family Guaranty Life Ins. Co., and First National Life Ins. Co. of America, Anne B. Pope, Commissioner of Commerce and Ins. for the State of TN, in her official capacity as received of Franklin American Life Ins. Co., Scott B. Lakin, Director of the Department of Ins. for the State of Missouri, in his official capacity as receiver of International Financial Services Life Ins. Co., Carroll Fisher, Insurance Commissioner for the State of Oklahoma, in his official capacity as receiver of Farmers and Ranchers Life Ins. Co., Mike Pickens, Insurance Commissioner for the State of Arkansas, in his official capacity as receiver of Old Southwest Life Ins. Co., plaintiffs.

Charles R. Wilbanks, Jr., Wells, Moore, Simmons & Hubbard, Jackson, Thomas A. Pistone, Pistone & Wolder, LLP, Irvine, CA, Daniel J. Mulholland, Alan Walter Perry, Jason D. Watkins, Forman, Perry, Watkins, Krutz & Tardy, Jackson, MS, John N. Quisenberry, The Quisenberry Law Firm, PC, Los Angeles, CA, J. Clifton Johnson, II, Pigott, Reeves, Johnson & Minor, P.A., Jackson, Kurt F. Zimmerman, Nathan M. Silverstein, Silverstein & Osach, P.C., New Haven, CT, W. Thomas McCraney, III, McCraney & Montagnet, PLLC, Jackson, Jeffrey S. Lena, Law Offices of Jeffrey S. Lena, Berkeley, CA, Alexis J.N. Haller, Mary McNamara, Swanson & McNamara, LLP, San Francisco, CA, Frank W. Trapp, Christopher R. Maddux, Phelps Dunbar, Jackson, for Emilio Colagiovanni, Monitor Ecclesiasticus Foundation, Monex Deposit Company, Edward David Collins, Thomas Corbally, Endurance Investments, Ltd., Holy See, aka Vatican City State, Monitor Ecclesiasticus Foundation, Caldwell & Caldwell, James Caldwell, Jr., James Caldwell, III, defendants.

## OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on the following Motions:

1) the Motion of the Vatican to Dismiss for Lack of Subject Matter Jurisdiction;

2) the Motion of the Vatican to Extend Time to Serve Reply Brief in Support of Motion to Dismiss; and

3) the Motion of the Vatican to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).

Having considered the Motions, Responses and Rebuttals, as well as supporting and opposing legal authority, the Court finds that:

1) the Motion of the Vatican to Dismiss for Lack of Subject Matter Jurisdiction is well taken in part and should be granted in part, and the Motion is not well taken in part and should be denied in part;

2) the Motion of the Vatican to Extend Time to Serve Reply Brief in Support of Motion to Dismiss is well taken and should be granted; and

3) the Motion of the Vatican to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) should be denied, without prejudice.

An outline of the topics in this Opinion and Order is presented on the following page.

## Outline of Topics

I. Factual Background and Procedural History

II. Motion to Dismiss Under Rule 12(b)(1)

  (A) Legal Standard

  (B) Relevant Principles of Sovereign Immunity

  (C) Whether Comity Bars Plaintiffs' Claims

  (D) Whether the Commercial Activity Exception to the FSIA Applies

    (1) Whether Colagiovanni was an Agent of the Vatican

      (a) Whether Plaintiffs' Commercial Activity Exception Argument Fails Because Colagiovanni was not an Agent of the Vatican

      (b) Whether Apparent Authority Can be Conferred Under the Commercial Activity Exception

      (c) Whether Apparent Authority Fails Because Plaintiffs did not to Allege Compliance with Regulatory Requirements

      (d) Whether Apparent Authority Fails Because Plaintiffs did not Fulfill Their Duty of Investigation

      (e) Conclusion—Agency Issue

    (2) Whether Plaintiffs' Commercial Activity Exception Argument Fails Because the Creation of a Charitable Foundation is not the Type of Activity that a Private Person Typically Engages in for Profit

    (3) Whether Plaintiffs' Commercial Activity Exception Argument Fails Because the Criminal Activity Alleged is not the Type of Activity that a Private Person Typically Engages in for Profit

    (4) Whether Plaintiffs' Claims against the Vatican are Barred by 28 U.S.C. § 1605(a)(5)(B)

    (5) Conclusion—Commercial Activity Exception

  (E) Whether Plaintiffs' RICO Claims are Barred Because a Foreign Sovereign is not "Indictable" as Required by RICO

  (F) Whether Plaintiffs' Claims are Barred Because a Foreign Sovereign Cannot Form Fraudulent Intent

  (G) Whether Plaintiffs Lack Standing to Sue the Vatican

III. Motion of the Vatican to Extend Time to Serve Reply Brief in Support of Motion to Dismiss

IV. Motion to Dismiss Under Rule 12(b)(6)

V. Conclusion

## I. Factual Background and Procedural History [1]

This cause of action arises out of an alleged scheme by Martin Frankel to misappropriate the assets of several insurance companies through fraudulent means. Frankel allegedly purchased insurance companies, then wrongfully diverted the funds and assets of the companies for his personal use. Frankel's fraudulent activity extended from 1990 through 1999. During the 1998 through 1999 time frame, Plaintiffs allege that Defendants aided Frankel in his fraudulent activities.[2] The Plaintiffs are:

---

1. This recitation of facts is not intended to be all-inclusive. The case is factually complicated. · Facts specific to the subject Motions are further developed below.

2. Frankel, also known as "Rosse," is not a party to this suit. He pled guilty to criminal charges of fraud and racketeering in relation to the claims asserted in this cause.

1) George Dale, Commissioner of Insurance for the State of Mississippi as Receiver of Franklin Protective Life Insurance Company.

2) George Dale, Commissioner of Insurance for the State of Mississippi as Receiver of Family Guaranty Life Ins. Co.

3) George Dale, Commissioner of Insurance for the State of Mississippi as Receiver of First National Life Insurance Company of America.

4) Paula Flowers, Commissioner of Commerce and Insurance for the State of Tennessee as Receiver of Franklin American Life Insurance Company.

5) Scott B. Larkin, Director of the Department of Insurance for the State of Missouri as Receiver of International Financial Services Life Insurance Company.

6) Carroll Fisher, Insurance Commissioner for the State of Oklahoma as Receiver of Farmers and Ranchers Life Insurance Company.

7) Mike Pickins, Insurance Commissioner for the State of Arkansas as Receiver of Old Southwest Life Insurance Company.

The Defendants are:

1) Emilio Colagiovanni: Colagiovanni was a Roman Catholic "monsignor" who was allegedly associated with the Vatican. Colagiovanni has been criminally charged in the United States with fraud and conspiracy to launder money. These criminal charges relate to the Frankel's alleged fraudulent schemes.

2) Edward David Collins: In 1998, Collins served as officer and director of American Service Corporation (hereinafter "ASC"). Frankel used ASC as a front through which to purchase insurance companies. In 1999, Collins served as Trustee of St. Francis of Assisi Foundation to Serve and Help the Poor and Alleviate Suffering (hereinafter "St. Francis"). St. Francis was another front through which Frankel attempted to purchase insurance companies. It was created outside of the Vatican, but was touted by Frankel and his associates as a Vatican-related charity.

3) Thomas Corbally: Corbally was a New York resident with world-wide business contacts. Frankel allegedly met many of his contacts through Corbally.

4) Endurance Investments, LTD (hereinafter "Endurance"): Frankel used Endurance as a conduit through which to compensate Corbally for his services.

5) The Holy See a/k/a Vatican City State (hereinafter "the Vatican"): The Vatican is a unique entity with its own sovereign territory, surrounded by Rome, Italy. The Vatican was allegedly associated with Frankel through the activities of its agents Colagiovanni, the *Monitor Ecclesiasticus* Foundation and other Vatican officials.

6) *Monitor Ecclesiasticus* Foundation (hereinafter "MEF"): MEF was an autonomous pious foundation established in the Archdiocese of Naples, Italy. Plaintiffs allege that MEF was headquartered in the Vatican at all relevant times. Plaintiffs further allege that at all relevant times, Colagiovanni was its president and legal representative.

7) Caldwell & Caldwell (Caldwell & Caldwell and the two individual Caldwell Defendants identified below are sometimes collectively referenced as "the Caldwells"): The Caldwells were in the business of brokering insurance company acquisitions. They

were involved in brokering one or more of Frankel's insurance company acquisitions.

8) James Caldwell, Jr. (hereinafter "Caldwell Jr."): Caldwell Jr. was a principal of Caldwell & Caldwell.

9) James Caldwell III (hereinafter "Caldwell III"): Caldwell III was a principal of Caldwell & Caldwell.

10) Monex Deposit Company (hereinafter "Monex"): Monex was a commodities broker dealing primarily in precious metals. It allegedly purchased and resold gold coins for Frankel after his fraud scheme was uncovered.

Plaintiffs filed suit in this case on August 31, 2001. The Fourth Amended Complaint, which is the currently operative Complaint, was filed on April 4, 2003. The claims in the Fourth Amended Complaint are:

COUNT I claims against Defendant *Collins:*

a) violation of 18 U.S.C. § 1962(c), RICO claim

b) violation of 18 U.S.C. § 1962(d), RICO claim

c) civil conspiracy

d) aiding and abetting fraud

COUNT II claims against Defendants *Colagiovanni, MEF and The Vatican:*

a) violation of 18 U.S.C. § 1962(c), RICO claim

b) violation of 18 U.S.C. § 1962(d), RICO claim

c) common law fraud

d) civil conspiracy

e) aiding and abetting fraud

COUNT III:

a) Claims against Defendant *Corbally only:*

1) violation of 18 U.S.C. § 1962(c), RICO claim

b) Claims against Defendants *Corbally and Endurance:*

1) violation of 18 U.S.C. § 1962(d), RICO claim

2) civil conspiracy

3) aiding and abetting fraud

COUNT IV claims against Defendants *the Caldwells:*

a) violation of 18 U.S.C. § 1962(c), RICO claim

b) violation of 18 U.S.C. § 1962(d), RICO claim

c) civil conspiracy

d) aiding and abetting fraud

COUNT V, claims against Defendant *Monex:*

a) violation of 18 U.S.C. § 1962(d), RICO claim

b) civil conspiracy

c) aiding and abetting fraud

The Caldwells filed an Answer to the Complaint on March 3, 2003. The Answer included a Cross–Claim against Defendant Collins. In the Cross–Claim, the Caldwells allege that Collins misrepresented his relationship with Frankel and other Frankel entities. The Caldwells further allege that but for Collins' misrepresentations to them, a business relationship would never have been formed between Collins and other Frankel entities on the one hand, and the Caldwells on the other. The Claims in the Cross–Claim are:

COUNT I violation of 18 U.S.C. § 1962(c), RICO claim

COUNT II violation of 18 U.S.C. § 1962(d), RICO claim

COUNT III civil conspiracy

COUNT IV aiding and abetting fraud

COUNT V fraudulent misrepresentation

COUNT VI negligent misrepresentation

COUNT VII indemnification

COUNT VIII contractual indemnification

COUNT IX punitive damages

The Caldwells also filed a Third–Party Complaint on March 10, 2003. The Third–Party Defendants are:

1) Akin, Gump, Strauss, Hauer & Feld LLP (hereinafter "Akin Gump"): Akin Gump provided legal representation to Frankel and Frankel entities, including but not limited to ASC and St. Francis.

2) Kay Tatum, Esq.: Tatum was the Akin Gump partner who took a lead role in the Frankel matters.

Through Tatum, Akin Gump allegedly withheld material facts and gave misleading legal advice to the Caldwells. The Claims in the Third–Party Complaint are:

COUNT I violation of 18 U.S.C. § 1962(c), RICO claim

COUNT II violation of 18 U.S.C. § 1962(d), RICO claim

COUNT I1l civil conspiracy

COUNT IV aiding and abetting fraud

COUNT V fraudulent misrepresentation

COUNT VI negligent misrepresentation

COUNT VII indemnification

COUNT VIII legal malpractice

COUNT IX punitive damages

The subject Motion to Dismiss was filed on November 14, 2003. In the Motion, the Vatican seeks dismissal of Plaintiffs' claims against it pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, which allows a party to seek dismissal for "lack of jurisdiction over the subject matter[.]" The Motion to Dismiss is now ripe for consideration.

## II. Motion to Dismiss Under Rule 12(b)(1)

### (A) Legal Standard

A party may challenge the subject matter jurisdiction of a federal court to hear a case under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). When challenged, the burden to prove jurisdiction is on the party asserting jurisdiction, which is typically the plaintiff. *Id.* "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* When a Rule 12(b)(1) motion sets forth a jurisdictional attack based on the face of a complaint, the well-pleaded allegations in the complaint must be taken as true. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.1981) (citations omitted).[3]

Jurisdiction is not defeated by the possibility that the claims in a complaint might fail to state a cause of action on which a plaintiff could actually recover. *Williamson*, 645 F.2d at 416 (citation omitted). "[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Id.* A motion to dismiss for lack of subject matter jurisdiction should be granted only if a court lacks statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Mississippi*, 143 F.3d 1006, 1010 (5th Cir.1998) (citation omitted). If a reasonable possibility exists that a plaintiff can prove any

---

**3.** The jurisdictional attack of the Vatican is based upon the face of the Complaint. Accordingly, the well pleaded allegations in Plaintiffs' Complaint must be taken as true at this stage of the litigation.

set of facts supporting jurisdiction, a Rule 12(b)(1) motion must be denied. *Id.*

### (B) Relevant Principles of Sovereign Immunity

Substantially all of the subject matter jurisdiction arguments of the Vatican are based on the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330 & 1602—1611 (hereinafter "FSIA").[4] The *grant* of jurisdiction over a foreign sovereign is set forth in § 1330(a), which states:

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

The jurisdictional authority of a federal court over a foreign sovereign is further premised upon subsequent sections of the FSIA.

To begin with, § 1604 sets forth the underlying principle of sovereign immunity.

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except

as provided in sections 1605 to 1607 of this chapter.

*Id.* Section 1604 directs us to §§ 1605 through 1607 for exceptions to the general rule of sovereign immunity. The only exceptions that apply to the subject analysis are stated in portions of § 1605. In relevant part, § 1605 states:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case-

> \* \* \* \* \*

> (2) in which the action is based upon a *commercial activity*[5] carried on in the United States by the foreign state;[6] or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;[7]

> \* \* \* \* \*

> (5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that

---

4. The parties do not dispute that the Vatican is a "foreign sovereign" or a "foreign state" within the context of the FSIA.

5. "A 'commercial activity' means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1602(d).

6. "A 'commercial activity carried on in the United States by a foreign state' means commercial activity carried on by such state and having substantial contact with the United States." 28 U.S.C. § 1602(e).

7. Section 1605(a)(2) is commonly known as the "commercial activity exception" to sovereign immunity. Plaintiffs rely on the commercial activity exception in their attempt to overcome the sovereign immunity arguments asserted by the Vatican.

foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to-

\* \* \* \* \*

(B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]

(Emphasis added).

These provisions of the FSIA will be further analyzed below, where applicable. The following subsections of this Opinion consider the various arguments asserted by the Vatican in support of its Rule 12(b)(1) Motion to Dismiss.

### (C) Whether Comity Bars Plaintiffs' Claims

The Vatican argues that comity requires the dismissal of Plaintiffs' claims against it. In general, "[f]oreign sovereign immunity...derives from concerns of grace and comity between the nations." *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 251 (5th Cir.2002). With this general concept as a guide, the Court must consider the specific provisions of the FSIA. The Vatican cites no case law standing for the proposition that, under the facts presented in Plaintiffs' Complaint, the principle of comity necessarily trumps the exceptions to sovereign immunity contained in the commercial activity exception of § 1605(a)(2). Accordingly, the Court finds that the comity arguments of the Vatican must fail. Alternatively, the comity arguments must fail because the Court finds that maintenance of this suit will not significantly damage the political relationship between the United States and the Vatican.

### (D) Whether the Commercial Activity Exception to the FSIA Applies

Plaintiffs rely on the commercial activity exception of the FSIA in their attempt to overcome the sovereign immunity arguments of the Vatican. The commercial activity exception is embodied in § 1605(a)(2). In review, the commercial activity exception provides that sovereign immunity is inapplicable in cases

in which the action is based upon a *commercial activity* carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States[.]

*Id.* (emphasis added). The Vatican asserts several arguments pertaining to the alleged inapplicability of the commercial activity exception. Those arguments are presented in the following subsections of this Opinion.

#### (1) Whether Colagiovanni was an Agent of the Vatican

Plaintiffs' claims against the Vatican must fail unless Colagiovanni is found to be an agent of the Vatican at all relevant times. Following are the arguments presented by the Vatican in its attempt to establish that no such agency relationship existed.

##### (a) Whether Plaintiffs' Commercial Activity Exception Argument Fails Because Colagiovanni was not an Agent of the Vatican

The parties agree that an agency relationship may be formed through actual authority, apparent authority or ratification. The Court finds herewith that, at a minimum, the assertions in Plaintiffs' Complaint are sufficient to overcome dis-

missal on this issue under the principle of agency through apparent authority. Accordingly, the Court need not address the agency theories of actual authority or ratification.

■ The common law doctrine of apparent authority is defined as "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." *Arceneaux v. Texaco, Inc.*, 623 F.2d 924, 926 (5th Cir.1980) (citing Restatement (Second) of Agency § 8 (1958)). In *Clark Adver. Agency, Inc. v. Tice*, 490 F.2d 834 (5th Cir.1974), the United States Court of Appeals for the Fifth Circuit set forth an additional definition of apparent authority, which is consistent with the definition articulated by the *Arceneaux* court. The *Tice* court held that:

> Apparent authority exists whenever a principal manifests to a third person that an officer or agent may act in its behalf, and the third person in good faith believes that the authority exists. When that third person reasonably relies upon that apparent authority to his detriment, the principal is estopped to deny the authority.

*Tice*, 490 F.2d at 836 (citations omitted).

■ To apply the holdings in *Arceneaux* and *Tice* to the subject apparent authority issue, consideration of the following background facts is necessary. St. Francis was a vehicle through which Frankel attempted to purchase insurance companies in the United States. St. Francis was established as a trust in the Virgin Islands in August 1998. St. Francis was established outside of the purview of the Vatican. However, MEF, which was headquartered in the Vatican, was named as its settlor

with a contribution of ninety million dollars. MEF was an autonomous pious foundation established in the Archdiocese of Naples, Italy, under the internal laws of the Roman Catholic Church. Colagiovanni was allegedly the president and legal representative of MEF at all relevant times. In the following analysis, the Court must consider whether Colagiovanni, based on his position with MEF and his position with the Vatican, had apparent authority to act on behalf of the Vatican regarding the conduct alleged in the Fourth Amended Complaint.

The first series of allegations that supports a finding of apparent authority pertains to efforts made by C. Paul Sandifur, the president of the parent company of Western United, to confirm the relationship between the Vatican, MEF and St. Francis. The Fourth Amended Complaint states:

> 77. Vatican leadership was informed on several occasions that persons acting on behalf of St. Francis and MEF were representing that St. Francis was connected with the Vatican, and making misrepresentations about St. Francis' funding and control. In January 1999, C. Paul Sandifur..., the president of Western United's parent company, sent a letter to Vatican Secretary of State Angelo Cardinal Sodano asking for a confirmation of statements about St. Francis' and MEF"s relationship to the Vatican. In particular, Sandifur asked Cardinal Sodano (a) whether St. Francis was an agent of the Holy See, (b) whether MEF was a Vatican foundation, (c) whether MEF was the settlor of St. Francis, and (d) whether the Holy See had given $190 million to MEF and St. Francis, as had been represented.
>
> 78. *Sostituto* Re [8] sent a reply on behalf of the Vatican, but stated only that,

---

8. *Sostituto* Re was the head of the First Section of the Vatican Secretariat of State.

Fourth Amended Complaint, p. 17, ¶ 56. He

with respect to St. Francis, "no such foundation has the approval of the Holy See or exists in the Vatican." Re did not deny that the Vatican had donated $190 million to MEF, that MEF donated $190 million to St. Francis, or that MEF was a Vatican foundation.

79. Despite being informed through the Western United letter that statements were being made in the United States to insurance companies that the Vatican knew were false, neither Re nor any other Vatican official took steps to correct or stop the misrepresentations made by Colagiovanni, Frankel and others concerning St. Francis' control and funding. In fact, by giving an incomplete response to Sandifur's inquiries, Re created the impression that the statements he failed to address were true. Colagiovanni explained the letter by stating that, according to Vatican policy, failure to address certain facts in such a response indicates those facts are true.

Fourth Amended Complaint, pp. 23–24, ¶¶ 77–79.

These allegations indicate a clear and unambiguous attempt on the part of Western United to confirm with the Vatican the veracity of Colagiovanni's statements regarding MEF and its relationship with the Vatican, as well as the role of MEF in the proposed acquisition of Western United. Sodano's failure to completely and accurately respond to Sandifur's questions supports a finding that Colagiovanni, through his position with MEF, had the apparent authority to act on behalf of the Vatican in regard to the claims asserted in the Plaintiffs' Complaint.

The next set of allegations supporting a finding of apparent authority pertains to efforts by the Vatican to tacitly conceal the true nature of MEF and St. Francis by routing any outside inquiries about those entities to Colagiovanni. Regarding those efforts, the Fourth Amended Complaint states:

89. Cacciavillan [9] was informed that a private individual,[10] and not MEF or the Vatican, was the source of St. Francis' funds, and he knew that MEF would be used as a vehicle through which this private individual would make "donations" to St. Francis. Despite this knowledge, Cacciavillan did not tell Bolan or Colagiovanni to stop claiming that the funds originated with MEF or the Vatican. Cacciavillan directed only that St. Francis not be held out as a Vatican foundation, and did not express any concern about any other aspects of the described relationship between St. Francis and MEF or between MEF and the Vatican.

90. Instead, Cacciavillan, Colagiovanni and Bolan agreed that if the Vatican received any future inquiries related to St. Francis' purchase of United States insurance companies, the inquiries would be routed to Colagiovanni or someone else who understood the MEF/St. Francis plan, who could then respond.

Fourth Amended Complaint, pp. 26–27, ¶¶ 89–90. Cacciavillan's alleged routing of outside inquiries regarding MEF and St. Francis to Colagiovanni supports a conclusion that Colagiovanni had apparent authority to act on behalf of the Vatican.

was the third highest ranking Vatican official at the time. *Id.*

9. Agostino Cardinal Cacciavillan was the president of the Administration of the Property of the Holy See. Fourth Amended Complaint, p. 26, ¶ 88. He was the official in

charge of investments for the Vatican. *Id.* He was also the former Ambassador of the Vatican to the United States. *Id.*

10. The "private individual" referenced in ¶ 89 of the Fourth Amended Complaint is Frankel.

Other allegations in the Fourth Amended Complaint which tend to indicate that Colagiovanni had apparent authority to act on behalf of the Vatican include the following: After speaking with Monsignor Gianfranco Piovano [11] and Bishop Francesco Salerno,[12] Colagiovanni faxed a letter to Thomas A. Bolan [13] stating that MEF was authorized to receive $55 million from Frankel (Fourth Amended Complaint, p. 16, ¶ 54); Colagiovanni used Vatican letterhead in some of his correspondence (Fourth Amended Complaint, p. 16, ¶ 54 & p. 28, ¶ 93); and, Colagiovanni represented himself as an official of the Vatican at the hearing before the Mississippi Department of Insurance on April 29, 1999 (Fourth Amended Complaint, p. 28, ¶ 96).

All of the aforementioned allegations in the Fourth Amended Complaint support a finding that the Vatican, through its officials, manifested to third parties, i.e. the Plaintiffs in this case, that Colagiovanni had authority to act on behalf of the Vatican. Under the holdings in *Arceneaux* and *Tice*, this manifestation to Plaintiffs supports a conclusion that Colagiovanni had the apparent authority to act as an agent of the Vatican. However, the Vatican argues that the Court must nevertheless find that no apparent authority existed. The arguments of the Vatican follow.

### (b) Whether Apparent Authority Can be Conferred Under the Commercial Activity Exception

Citing *Phaneuf v. Republic of Indonesia*, 106 F.3d 302 (9th Cir.1997), the Vatican argues that "[a]pparent authority cannot confer jurisdiction over a foreign sovereign because the commercial activity exception requires that a suit be based on the commercial activity of 'the *foreign state* [;]'" thus *actual authority* rather than *apparent authority* is required to confer jurisdiction under the FSIA. Memorandum in Support of Motion to Dismiss, p. 9 (emphasis in original). *Phaneuf*, a case decided by the United States Court of Appeals for the Ninth Circuit, does in fact stand for the proposition asserted by the Vatican. One of the issues in *Phaneuf* was "whether an agent of a foreign sovereign state must have acted with *actual* authority to invoke the commercial activity exception [of the FSIA] against a foreign state, or whether *apparent* authority suffices." *Phaneuf*, 106 F.3d at 307 (emphasis in original). The *Phaneuf* court provided a detailed analysis of this issue, and concluded that "an agent must have acted with actual authority in order to invoke the commercial activity exception against a foreign state." *Id.* at 308. The Court notes that the United States Supreme Court has not directly addressed this issue, and no other United States Circuit Court has adopted the rationale in *Phaneuf*.

This Court recognizes that *Phaneuf* is the only circuit court authority directly on point. However, the Court must look to binding Fifth Circuit law to resolve the issue. The Fifth Circuit has not analyzed the apparent authority issue with the level of specificity articulated the Ninth Circuit in *Phaneuf*. But it has, at least in dicta, considered apparent authority in the context of the FSIA in two cases. In *Hester Int'l Corp. v. Fed. Republic of Nigeria*, 879 F.2d 170, 181 (5th Cir.1989), the Fifth Circuit analyzed whether an instrumentality was acting as an agent of a sovereign

---

**11.** Piovano was an employee of the Vatican Secretariat of State. Fourth Amended Complaint, p. 16, ¶ 52.

**12.** Salerno was the Secretary of the Prefecture of Economic Affairs of the Vatican.

Fourth Amended Complaint, p. 15, ¶ 50. He was also on the board of MEF. *Id.*

**13.** Bolan was a New York lawyer. Fourth Amended Complaint, p. 14, ¶ 45.

for purposes of the commercial activity Exception of § 1605(a)(2). The *Hester* court held that "it is worth noting that actual or *apparent authority* of an agent must be shown by some 'manifestations, written or spoken words or conduct, by the principal, communicated either to the agent (actual authority) or to the third party (*apparent authority* ).' " *Id.* at 181 (emphasis added; citations omitted). Citing *Hester,* the Fifth Circuit in *Arriba Ltd. v. Petroleos Mexicanos,* 962 F.2d 528, 536 (5th Cir.1992), stated a similar holding. *See also, Enron Equip. Procurement Co. v. The M/V Titan 2,* 82 F.Supp.2d 602, 608–10 (W.D.La.1999).

■ Based on the holdings in *Hester* and *Arriba,* this Court concludes that under Fifth Circuit law, apparent authority can confer jurisdiction over a foreign sovereign under the commercial activity exception to the FSIA. Accordingly, the argument asserted by the Vatican on this apparent authority issue must be rejected.

### (c) Whether Apparent Authority Fails Because Plaintiffs did not to Allege Compliance with Regulatory Requirements

The Vatican alleges that specific state regulations pertaining to the acquisition of insurance companies *must* be followed. Because Plaintiffs allegedly failed to follow the regulations, the Vatican further contends that Colagiovanni cannot be deemed an agent of the Vatican. Specifically, the Vatican argues that

[t]he applicable regulations in Colorado, Washington and Mississippi all require, in connection with the filing of a Form A or Form D, that the agent present *written* proof of his authorization to acquire an insurance company. *See* Colo. Am. Reg. 3–4–1(4)(B); Wash. Admin. Code § 284–18–300(2); Miss. Ins. Dept. Reg. No. 92–103(4)(b). Despite these State requirements for *written* proof of actual

authority to acquire an insurance company, Plaintiffs fail to allege that the Vatican provided any such written authorization to Colagiovanni to submit to insurance regulators.

Memorandum in Support of Motion to Dismiss, p. 7 (emphasis in original).

Plaintiffs point out an obvious fallacy in the argument asserted by the Vatican. Plaintiffs correctly contend that

even if the Vatican were correct in its interpretation of the regulations and the relevance of Section 28 [of the Restatement (Second) of Agency], the only person required to attach written evidence of his authority to the Forms or to sign the Forms under seal would be the officer or president of the acquiring entity—St. Francis—not Colagiovanni, MEF or the Vatican. *See, e.g.* Miss. Ins. Dept. Reg. 92–103, Form A (the word "seal" appears next to the blank for the acquiring party). *See also* [Fourth Amended Complaint], ¶ 67 (St. Francis filed Form A). The regulations are silent as to any formalities required of nonsignatories who may provide affidavits, testimony, or other information in support of a Form A as Colagiovanni did. Thus, these regulations have no relevance to the Vatican's liability for Colagiovanni's actions.

Memorandum in Opposition to Motion to Dismiss, p. 45. The Court agrees with Plaintiffs' argument. Therefore, the Court finds that the state regulations cited by the Vatican do not bar the Court from finding that Colagiovanni was an agent of the Vatican.

### (d) Whether Apparent Authority Fails Because Plaintiffs did not Fulfill Their Duty of Investigation

Citing *Employers Ins. of Wausau v. Suwanne River Spa Lines,* 866 F.2d 752 (5th Cir.1989), the Vatican argues that Plain-

tiffs' apparent authority theory fails because they did not comply with the duty to investigate the true nature of Colagiovanni's authority to act on behalf of the Vatican. Establishing the parameters of apparent authority, the *Employers Ins.* court held:

> [T]he principal will not be bound by the act of his agent in excess of his actual authority where the party doing business with the agent knows the extent of the latter's authority, or *where the facts and circumstances are such as to put him on inquiry as to the power and good faith of the agent.*

*Id.* (emphasis in original; citations omitted).

To the extent that *Employers Ins.* established a *separate* requirement of "inquiry" over and above the "reasonable reliance" requirement established in *Tice,* (*see supra*), which this Court is not definitively finding herewith, under the allegations in the Fourth Amended Complaint the Court concludes that Plaintiffs met the purported "inquiry" requirement.

First considered are the allegations in paragraph seventy-seven of the Fourth Amended Complaint.

> 77. Vatican leadership was informed on several occasions that *persons acting on behalf of St. Francis and MEF* were representing that St. Francis was connected with the Vatican, and making misrepresentations about St. Francis' funding and control. In January 1999, C. Paul Sandifur..., the president of Western United's parent company, sent a letter to Vatican Secretary of State Angelo Cardinal Sodano asking for a confirmation of statements about St. Francis' and MEF's relationship to the Vatican. In particular, Sandifur asked Cardinal Sodano (a) whether St. Francis was an agent of the Holy See, (b) whether MEF was a Vatican foundation, (c) whether MEF was the settlor of St. Francis, and (d) whether the Holy See had given $190 million to MEF and St. Francis, as had been represented.

(Emphasis added). One of the "persons acting on behalf of St. Francis and MEF" referenced in paragraph seventy-seven is obviously Colagiovanni. The contents of paragraph seventy-seven represent an attempt by Western United to establish the veracity and the authority of the speakers who were making representations regarding the association between the Vatican on the one hand, and St. Francis and MEF on the other. Accordingly, the contents of paragraph seventy-seven support a finding that Plaintiffs met their "inquiry" requirement (if such a requirement exists) regarding Colagiovanni's authority to act on behalf of the Vatican.

The Court next looks to paragraph seventy-nine of the Fourth Amended Complaint, which states in part:

> Despite being informed by the Western United letter that statements were being made in the United States to insurance companies that the Vatican knew were false, neither Re nor any other Vatican official took steps to correct or stop the misrepresentations made by Colagiovanni, Frankel and others concerning St. Francis' control and funding.

This paragraph further supports a finding that the "inquiry" requirement was met because Western United sent correspondence to the Vatican regarding representations made by Colagiovanni, and the Vatican took no steps to correct the alleged misrepresentations. The Court therefore finds that to the extent Plaintiffs were required to affirmatively inquire into Colagiovanni's authority to act on behalf of the Vatican, that requirement was met.

### (e) Conclusion—Agency Issue

Based on the findings presented above, the Court finds that Colagiovanni had the

apparent authority to act on behalf of the Vatican, at least in the context of a motion to dismiss under Rule 12(b)(1). Because a finding of apparent authority is sufficient to establish an agency relationship between the Vatican and Colagiovanni with regard to the claims in the Fourth Amended Complaint, the issues of agency through actual authority and agency through ratification are not addressed herewith.

### (2) Whether Plaintiffs' Commercial Activity Exception Argument Fails Because the Creation of a Charitable Foundation is not the Type of Activity that a Private Person Typically Engages in for Profit

■ The Vatican argues that the commercial activity exception to the FSIA is not applicable because the formation of a charitable trust is not the type of activity that a private person or entity typically engages in for profit. Citing *de Sanchez v. Banco Cent. de Nicaragua*, 770 F.2d 1385, 1391 (5th Cir.1985), the Vatican correctly contends that analysis of this issue "requires focusing on the acts of the named defendant, not on other acts that may have had a causal connection with the suit." Memorandum in Support of Motion to Dismiss, p. 14. The focus of this argument is that "[t]he Vatican acts alleged here are the approval of a charitable foundation. *See* [Fourth Amended Complaint] ¶¶ 45–59. Because the approval of a charitable foundation is not the type of activity that a private person typically engages in for profit, the [commercial activity] exception does not apply." Rebuttal Memorandum in Support of Motion to Dismiss, p. 26.

The arguments of the Vatican are not well taken. In *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992), the United States Supreme Court found that motivation for profit is not the proper issue upon which to focus in determining whether the commercial activity exception applies. Analyzing the commercial activity exception, the *Weltover* Court held that "the question is not whether the foreign government is acting with a profit motive.... Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in 'trade and traffic or commerce[.]' " *Id.* at 614, 112 S.Ct. 2160 (emphasis in original; citations omitted).[14] Guided by the holding in *Weltover*, this Court finds that the formation of a charitable trust is the type of activity by which a private party could participate in "trade and traffic or commerce." Therefore, the argument of the Vatican on this issue must fail.

### (3) Whether Plaintiffs' Commercial Activity Exception Argument Fails Because the Criminal Activity Alleged is not the Type of Activity that a Private Person Typically Engages in for Profit

■ The Vatican contends that Plaintiffs' claims necessarily fall outside of the commercial activity exception because they are based on allegations of criminal activity. This argument is founded solely on a holding in *MCI Telecomm. Corp. v. Alhadhood*, 82 F.3d 658 (5th Cir.1996).

14. The Court is aware that the Fifth Circuit has held that motivation for profit is a consideration in determining whether the commercial activity exception applies. *See, United States v. Moats*, 961 F.2d 1198, 1205 (5th Cir.1992)(holding that "[a]n activity is considered 'commercial' if it is the type a private person normally would engage for profit." (citation omitted)). This Court does not perceive a conflict in the holdings in *Moats* and *Weltover*. Although motivation for profit may be a factor to be considered in the analysis, under *Weltover*, it is not the sole consideration.

In *Alhadhood,* foreign students undergoing military training in the United States made unauthorized telephone calls. Finding that the commercial activity exception did not apply to the telephone calls, the court held "[e]ven if we were to attempt to apply the commercial activity exception, *the nature of the calls, which were stolen,* could not be found to be 'commercial.'" *Id.* at 664 (emphasis added). Based on this holding, the Vatican contends that any criminal activity, by its very nature, cannot be considered "commercial activity." Because the claims alleged by Plaintiffs are based on crimes, the Vatican further asserts that the commercial activity exception is inapplicable in this case.

To find that the argument of the Vatican is correct, this Court would have to conclude that in *Alhadhood,* the Fifth Circuit hinged their finding that the subject telephone calls were not commercial, by their "very nature," because they were stolen. Based on the limited analysis of this issue by the *Alhadhood* court, this Court is not prepared to make such a finding. The *Alhadhood* court could have meant that the "nature of telephone calls" in general did not meet its own adopted definition of "commercial activity,"[15] and simply included the phrase "which were stolen," as dicta. Furthermore, the nature of the telephone calls in *Alhadhood* was personal, not commercial. The activity in question in this case was the purchase of insurance companies, which was clearly commercial in nature, although performed in an illegal manner. For these reasons, the Court rejects the argument of the Vatican on this issue.

### (4) Whether Plaintiffs' Claims against the Vatican are Barred by 28 U.S.C. § 1605(a)(5)(B)

28 U.S.C. § 1605(a)(5) embodies the "tort exception" to sovereign immunity.[16] In summary, § 1605(a)(5) abrogates sovereign immunity for most torts. The Vatican argues that Plaintiffs' claims against it are barred by 28 U.S.C. § 1605(a)(5)(B), which can be categorized as an "exception to the tort exception" because it allows sovereign immunity for the torts of misrepresentation and deceit, as well as six other specifically enumerated torts.[17]

The basis of this argument is that the Court allegedly must look to the "essence"

---

**15.** The *Alhadhood* court defined "commercial activity" as:

"either a regular course of commercial conduct or a particular transaction or act." 28 U.S.C. § 1603(d). "The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id. See also Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 614, 112 S.Ct. 2160, 2166, 119 L.Ed.2d 394 (1992). We have stated "that an activity has a commercial nature for purposes of FSIA immunity if it 'is of a type that a private person would customarily engage in for profit.'" *Walter Fuller,* 965 F.2d at 1384 (5th Cir.1992) (quoting *Callejo v. Bancomer, S.A.,* 764 F.2d 1101, 1108 n. 6 (5th Cir.1985)). *Alhadhood,* 82 F.3d at 662–63.

**16.** 28 U.S.C. § 1605(a)(5) states:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

\*     \*     \*     \*     \*     \*

(5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment[.]

**17.** 28 U.S.C. § 1605(a)(5)(B) exempts from the provisions of § 1605(a)(5) "any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]"

of Plaintiffs' claims in the Fourth Amended Complaint, rather than the title assigned to the claims, in order to determine which sovereign immunity exception applies. Citing *de Sanchez*, 770 F.2d at 1398–99, the Vatican contends that "[b]ecause the essence of the complaint determines which FSIA exception to sovereign immunity controls…, Plaintiffs' attempt to avoid the § 1605(a)(5)(B) bar by recasting their claims as 'commercial' in nature fails." Memorandum in Support of Motion to Dismiss, p. 3 (emphasis in original). In other words, the Vatican contends that under *de Sanchez*, Plaintiffs' claims are "essentially" claims of misrepresentation and deceit, thus the tort exception rather than the commercial activity exception should apply in this case. Further, the Vatican contends that under § 1605(a)(5)(B) (the "exception" to the tort exception) it is immune from all of Plaintiffs' claims because they are torts based on misrepresentation and deceit.

■ The Court is not convinced by this argument. Without the benefit of binding case law on this specific issue, this Court finds that a misrepresentation or deceit claim which also involves commercial activity can be analyzed under the commercial activity exception to the FSIA. This finding is based on the initial sentence of § 1605(a)(5) which states "(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case… (5) *not otherwise encompassed in paragraph (2) above*, in which damages are sought…." (Emphasis added). The "not otherwise encompassed in paragraph (2) above" language refers to the commercial activity exception embodied in § 1605(a)(2). Considering this language, the Court finds that the provisions of § 1605(a)(5), to include the "exception to the tort exception" provisions of § 1605(a)(5)(B), do not apply when commercial activity is involved, as in the subject case. The Court therefore concludes that the provisions of § 1605(a)(5)(B) do not bar Plaintiffs' claims in this suit.

If the Court is incorrect in the analysis and conclusions presented in the previous paragraph, the arguments of the Vatican on this issue must nevertheless fail. Citing specific paragraphs in the Fourth Amended Complaint, the Vatican contends that all of the claims asserted by Plaintiffs against it are based on misrepresentation and deceit. *See,* Memorandum in Support of Motion to Dismiss, pp. 3–4. However, the Vatican omits at least one claim that goes beyond the purview of misrepresentation and deceit. Plaintiffs claim that "[h]igh-ranking officials of the Vatican authorized or ratified the plan whereby MEF would be used as a conduit for the flow of Frankel's money to St. Francis to purchase U.S. insurance companies." Fourth Amended Complaint, p. 48, ¶ 140. This allegation represents a claim that the Vatican used wrongfully obtained funds for the purchase of insurance companies, which is a claim falling outside the scope of misrepresentation or deceit. For this alternative reason, the Court cannot accept the arguments asserted by the Vatican on this issue.

**(5) Conclusion—Commercial Activity Exception**

For all of the reasons set forth above, the Court finds that the commercial activity exception to the FSIA applies in this case, and that Plaintiffs have met their burden to prove that the Vatican is subject to the jurisdiction of this Court under said exception, at least within the context of the standards that must be applied in this Rule 12(b)(1) analysis. Next considered are various other arguments asserted by the Vatican to the effect that this Court should not exercise jurisdiction over it.

**(E) Whether Plaintiffs' RICO Claims are Barred Because a Foreign Sovereign is not "Indictable" as Required by RICO**

Plaintiffs have asserted claims against the Vatican under two separate provisions of the RICO statute. The first RICO claim is under 18 U.S.C. § 1962(c), which states:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of *racketeering activity* or collection of unlawful debt.

(Emphasis added).

▮ The Vatican argues that it cannot be liable for a violation under § 1962(c) because by definition, it is incapable of engaging in "racketeering activity." [18] "Racketeering activity," is defined in 18 U.S.C. § 1961(1). The definition sets forth a lengthy list of acts that constitute racketeering activity. *Id.* Of importance in this analysis is the requirement that the acts constituting racketeering activity must be criminally "chargeable" under state law or "indictable" under federal law. *Id.* Because a foreign sovereign is allegedly not chargeable or indictable for criminal acts, the Vatican argues that it could not have engaged in racketeering activity, thus it could not have violated the provisions of § 1962(c). The Court agrees.

To begin with, the jurisdictional power of a federal district court over a foreign sovereign is embodied in 28 U.S.C. § 1330. Section 1330(a) states "[t]he district courts shall have original jurisdiction without regard to amount in controversy of any non-jury *civil action* against a foreign state . . . ." (Emphasis added). Section 1330(a) clearly limits the exercise of jurisdiction by this Court over a foreign sovereign to *civil actions,* and is silent on the issue of jurisdiction over a foreign sovereign for *criminal* conduct. This code section supports the argument that the Vatican is not chargeable or indictable for criminal acts which, by definition, renders it incapable of engaging in racketeering activity.[19]

Analyzing this issue, the Court further looks to the provisions of 28 U.S.C. § 1604 of the FSIA, which states:

*Subject to existing international agreements* to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States *except as provided in sections 1605 to 1607* of this chapter.

(Emphasis added). Under § 1604, a foreign sovereign enjoys immunity unless an international agreement provides otherwise, or unless §§ 1605–1607 provide otherwise. No international agreement is in issue in this case. Also, §§ 1605–1607 do not state any type of exception to sovereign immunity for criminal acts.

Based on the provisions of 28 U.S.C. § 1330(a) and 28 U.S.C. § 1604, this Court finds that the Vatican is not a "chargeable" or "indictable" entity. Because susceptibility to being charged or indicted is a prerequisite to civil liability under 18 U.S.C. § 1962(c), the Court also finds that the Vatican is immune from liability under § 1962(c), and that claim against the Vatican must be dismissed. *See, McNeily v.*

---

18. It is undisputed that the Vatican did not engage in the collection of unlawful debt.

19. The Court is aware of no legal authority which grants a federal district court jurisdiction over a foreign sovereign in regard to a criminal charge.

*United States,* 6 F.3d 343, 350 (5th Cir.1993)(holding that an entity is not liable under the provisions of RICO if it is not " 'chargeable', 'indictable', or 'punishable' for violations of specific state and federal criminal provisions."); *Keller v. Cent. Bank of Nigeria,* 277 F.3d 811, 821 (6th Cir.2002) (holding that "a foreign sovereign is not indictable, and therefore not amenable to civil RICO claims. . . .").[20] Therefore, the RICO claim against the Vatican under § 1962(c) must be dismissed.

Plaintiffs also asserted a RICO claim against the Vatican under 18 U.S.C. § 1962(d). Under § 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of Subsections (a), (b), or (c) of this section." Plaintiffs argue that the Vatican can be liable for this RICO conspiracy claim even if the Court dismisses the claim asserted under § 1962(c).

Supporting this argument, Plaintiffs cite *Salinas v. United States,* 522 U.S. 52, 64, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997), for the proposition that "[a] person . . . may be liable for [RICO] conspiracy even though he was incapable of committing the substantive offense." However, this quote must be taken in context. The issue in *Salinas* was whether, "[i]f conspirators have a plan which calls for some conspirators to perpetuate the crime and others to provide support, the supporters are as *guilty* as the perpetrators." *Id.* (emphasis added). The Court found that such supporters, like the actual perpetrators of the underlying crime, could be "guilty" of the crime as well. "Guilt," of course, requires as a prerequisite that the actor be chargeable or indictable for a crime. As found above, the Vatican is not chargeable or

indictable for the underlying crimes, thus it cannot be "guilty" of them. *See, United States v. Stratton,* 649 F.2d 1066, 1074 (5th Cir.1981) (holding that "[t]he gravamen of a RICO conspiracy charge 'is that each (defendant) agreed to participate, directly or indirectly, in the affairs of the enterprise by committing two or more predicate crimes.' ") (citation omitted). Therefore, the Court finds that the Vatican is immune from prosecution for the RICO conspiracy claim asserted against it under 18 U.S.C. § 1962(d), and that claim must be dismissed as well.

In conclusion, the Court finds that the Vatican is immune from prosecution for the two RICO claims asserted by Plaintiffs against it. Therefore, those two claims against the Vatican must be dismissed, and the Court need not consider the remaining RICO arguments presented by the Vatican. The remaining surviving claims against the Vatican are Plaintiffs' state law claims of: (1) common law fraud; (2) civil conspiracy; and (3) aiding and abetting fraud.

**(F) Whether Plaintiffs' Claims are Barred Because a Foreign Sovereign Cannot Form Fraudulent Intent**

The Vatican argues that the claims against it must be dismissed because, as a foreign sovereign, it is incapable of forming fraudulent intent. The Vatican cites no binding case law in support of this contention. Furthermore, the persuasive authority cited by the Vatican has not convinced the Court that it is legally incapable of forming fraudulent intent to commit the crimes asserted by Plaintiffs. Ac-

---

**20.** The Court is aware that in at least one case decided by the Fifth Circuit, *Byrd v. Corporacion Forestal y Industrial De Olancho S.A.,* 182 F.3d 380 (5th Cir.1999), a civil RICO claim against a foreign sovereign was allowed to proceed. However, the issue of whether a foreign sovereign is chargeable or indictable was not raised in that case.

cordingly, the Court rejects the arguments of the Vatican on this issue.

### (G) Whether Plaintiffs Lack Standing to Sue the Vatican

The Vatican argues that Plaintiffs lack standing to bring the subject claims, thus the claims must be dismissed. This is the only argument for dismissal asserted by the Vatican which has little or nothing to do with sovereign immunity. The Vatican has also asserted the standing argument in its separate Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For these reasons, the Court opts to defer rendering a decision on the standing issue until the Motion to Dismiss under Rule 12(b)(6) is addressed. See section IV, *infra*, of this Opinion for further details regarding the procedural posture of the standing issue.

### III. Motion of the Vatican to Extend Time to Serve Reply Brief in Support of Motion to Dismiss

Through its Motion for Time, the Vatican sought additional time to file a Rebuttal in Support of its Motion to Dismiss. The Rebuttal has been filed, and Plaintiffs did not to object to the Motion for Time. The Rebuttal has been considered by the Court. The Court therefore finds that the Motion for Time should be granted.

### IV. Motion to Dismiss Under Rule 12(b)(6)

Under section II above, the Court analyzed the Motion of the Vatican to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Also outstanding is a second Motion to Dismiss filed by the Vatican on June 23, 2003, which is based on the provisions of Rule 12(b)(6). Because the holdings presented herewith will probably affect the arguments presented in the Rule 12(b)(6) Motion, the Court will deny the Rule 12(b)(6) Motion, *without prejudice*, and allow the Vatican to re-file a subsequent Motion to Dismiss under Rule 12(b)(6) on or before Wednesday, October 27, 2004.

### V. Conclusion

Based on the analysis and holdings presented above:

IT IS THEREFORE ORDERED that the Motion of the Vatican to Dismiss for Lack of Subject Matter Jurisdiction [159–1] is granted in part and is denied in part. The Motion is granted to the extent that Plaintiffs' RICO claims asserted against the Vatican under 18 U.S.C. § 1962(c) & (d) are hereby dismissed with prejudice, because the Federal Sovereign Immunity Act affords the Vatican complete immunity from the prosecution of these claims. The Motion is denied to the extent that Plaintiffs' claims against the Vatican for common law fraud, civil conspiracy and aiding and abetting fraud are not dismissed.

IT IS FURTHER ORDERED that the Motion of the Vatican to Extend Time to Serve Reply Brief in Support of Motion to Dismiss [166–1] is hereby granted.

IT IS FURTHER ORDERED that the Motion of the Vatican to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [118–1] is hereby denied, without prejudice. The Vatican may re-file a Motion to Dismiss pursuant to Rule 12(b)(6), if at all, on or before Wednesday, October 27, 2004.