124 F.3d 211
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Danuta KOZOROWSKI; Bronislaw Shicker; Polish Veterans of
World War II, Northern California Post,
Plaintiffs-Appellants,
v.
The RUSSIAN FEDERATION; Pravda, a business entity, form
unknown; Izvestia, a business entity form
unknown; Tass, a business entity, form
unknown, Defendants-Appellees.
 No. 93-16388.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: February 13, 1995.
September 19, 1997.
 
 Appeal from the United States District Court for the Northern District of California, No. CV-91-00793-WHO; William H. Orrick, District Judge Presiding.
 Before: FLETCHER, PREGERSON, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Danuta Kozorowski, Bronislaw Shicker, and the Polish Veterans of World War II ("Plaintiffs"), appeal the dismissal of their claims against the Russian Federation and its agents Pravda, Izvestia, and Tass, (collectively "Russia") for wrongful death, intentional infliction of emotional distress, conspiracy, and fraud and deceit. All the claims arise out of the executions of Plaintiffs' relatives in western Russia during World War II. The district court concluded that it had no subject matter jurisdiction over Plaintiffs' claims because no exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-1611, applied. We affirm.
 
 FACTS AND PRIOR PROCEEDINGS
 
 3
 In 1940, agents of the then Union of Soviet Socialist Republics ("Soviet Union") murdered approximately 5,000 Polish Army officers in the Katyn Forest in western Russia. Another 10,000 Polish Army officers and Polish community leaders were interned in camps by the Soviet army between the fall of 1939 and the spring of 1940. Most of these prisoners were never seen again. Plaintiffs allege that between March 1940 and July 1941, the Soviets murdered those who disappeared.
 
 
 4
 In 1943, when the Nazis had taken over the region, Nazi troops unearthed a mass grave in the Katyn Forest containing the bodies of some 4,500 Polish prisoners who had all been shot in the head. The Nazis accused the Soviet Union of executing the prisoners, while the Soviet Union denied responsibility and, in turn, blamed the Nazis. In 1990, the Soviet Union publicly admitted that the Soviet secret police conducted the massacre.
 
 
 5
 Plaintiffs now bring claims against the Russian Federation, as successor to the Soviet Union,[1] and its agents, for wrongful death, intentional infliction of emotional distress, conspiracy, and fraud and deceit. The district court dismissed the Plaintiffs' claims. The court found that Russia was entitled to immunity under the FSIA because none of Plaintiffs' claims fell within an exception to the FSIA's general grant of foreign sovereign immunity.
 
 I. The Foreign Sovereign Immunities Act
 
 6
 "The FSIA is the sole basis of subject matter jurisdiction over suits involving foreign states and their agencies and instrumentalities." Phaneuf v. Republic of Indonesia, 106 F.3d 302, 304 (9th Cir.1997); see also Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989). We review de novo the existence of subject matter jurisdiction under the FSIA. Phaneuf, 106 F.3d at 304-05.
 
 
 7
 Under the FSIA, foreign states "shall be immune from the jurisdiction of the courts of the United States and of the States" unless one of the enumerated exceptions applies. 28 U.S.C. § 1604; see also id. § 1330, 1605. One enumerated exception to the FSIA's general grant of foreign sovereign immunity is the noncommercial tort exception. Id. § 1605(a)(5). The noncommercial tort exception provides that a foreign sovereign is not immune from suit when "money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state." Id. (emphasis added).
 
 
 8
 There are, however, two exceptions to the noncommercial tort exception. These exceptions provide that foreign sovereigns are immune, even from suits based on noncommercial torts occurring in the United States, if either: (1) the challenged governmental action involves a "discretionary function," id. § 1605(a)(5)(A); or (2) the claim arises out of certain torts including "abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." Id. § 1605(a)(5)(B). While we conclude that no FSIA exception provides a basis for federal jurisdiction over Plaintiffs' claims, we analyze each of those claims separately.
 
 A. Wrongful Death Claims
 
 9
 The Soviet secret police executed Plaintiffs' relatives in 1940, long before the FSIA became law in 1976. Thus, an initial question is which immunity law applies. See. e.g., Carl Marks & Co., Inc. v. Union of Soviet Socialist Republics, 841 F.2d 26, 27 (2d Cir.1988) (declining to apply the FSIA retroactively in action against the Soviet Union to recover on debt instruments); Jackson v. People's Republic of China, 794 F.2d 1490, 1497-98 (11th Cir.1986) (declining to apply the FSIA retroactively in action against China for default on bonds); Slade v. United States of Mexico, 617 F.Supp. 351, 356-58 (D.D.C.1985) (declining to apply the FSIA retroactively in action against Mexico for default on bonds), aff'd mem., 790 F.2d 163 (D.C.Cir.1986). But see Princz v. Federal Republic of Germany, 26 F.3d 1166, 1170 (D.C.Cir.1994) (noting that "the implication is strong that all questions of foreign sovereign immunity, including those that involve an act of a foreign government taken before [the FSIA became law in 1976], are to be decided under the FSIA"), cert, denied, 513 U.S. 1121 (1995).
 
 
 10
 Before 1952, foreign sovereigns enjoyed virtually absolute immunity from suit in United States courts. See Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 486 (1983). In 1952, however, the Acting Legal Advisor of the State Department, Jack Tate, sent a letter to the Acting Attorney General that announced the State Department's decision to adopt a "restrictive" view of foreign sovereign immunity. Under that view, "the immunity of the sovereign is recognized with regard to sovereign or public acts (jure imperii ) of a state, but not with respect to private acts (jure gestionis )." Siderman de Blake v. Republic of Argentina, 965 F.2d 699, 705 (9th Cir.1992) (citation omitted).
 
 
 11
 Though the Tate letter altered the Executive Branch's view of foreign sovereign immunity, courts still did not have firm standards for determining when to assert jurisdiction over foreign states. See id. Thus, from 1952 until 1976, when Congress enacted the FSIA, courts deferred to the judgment of the State Department as to when to grant immunity. Id. In 1976, however, the FSIA replaced the unregulated system of Executive consultation with a complete legislative scheme. The FSIA essentially codified the "restrictive" view of sovereign immunity. Id. at 705-06; see also Verlinden, 461 U.S. at 487.
 
 
 12
 We need not decide whether the FSIA applies retroactively, however, because under either the FSIA or pre-1952 sovereign immunity law, Russia is immune from suit on Plaintiffs' wrongful death claims.
 
 
 13
 Assuming that the FSIA does not apply retroactively, we look to the practices of federal courts in 1940, when the murder of Plaintiffs' relatives occurred. See Princz, 26 F.3d at 1169 ("If the FSIA does not apply ... we are presumably remitted to the practice that prevailed in the federal courts ... when the events now in suit occurred."). From 1812, when the Supreme Court decided The Schooner Exchange v. McFaddon, 11 U.S. (7 Cranch) 116 (1812), until 1952 when the Tate letter was issued, the United States granted foreign sovereigns "virtually absolute immunity" from suit. Verlinden, 461 U.S. at 486. Courts deferred to decisions of the Executive Branch as to whether to take jurisdiction over actions of foreign sovereigns. Id. Until 1952, "the State Department ordinarily requested immunity in all actions against friendly foreign sovereigns." Id.
 
 
 14
 Plaintiffs argue that despite its general policy of requesting foreign sovereign immunity, the State Department would not have granted the Soviet Union immunity in 1940 as to the killings. Plaintiffs point to a 1951 Congressional inquiry into the Katyn Forest massacre as signaling Congress' interest in discovering who executed the Polish prisoners. See Final Report of the Select Committee to Conduct an Investigation and Study of the Facts, Evidence, and Circumstances on the Katyn Forest Massacre, pursuant to H.R. Res. 390, H. Res. 539, H.R.Rep. No. 2505, 82nd Cong., 2d Sess., at 1 (1952).
 
 
 15
 As the district court noted, however, the relationship between the United States and the Soviet Union changed significantly between 1940 and 1951. Thus, the mere hint that in 1951 the State Department might not have recognized the Soviet Union's immunity is not probative of whether immunity would have been recognized a decade earlier when the killings occurred. The State Department commonly recommended immunity before 1952, and no case has withdrawn foreign sovereign immunity for pre-1952 conduct. Given these circumstances, we conclude that in 1940 the State Department would have requested sovereign immunity for a World War II ally of the United States.
 
 
 16
 Even if the FSIA does apply to the 1940 killings, we conclude that Russia is entitled to immunity from Plaintiffs' wrongful death claims. An exception to the FSIA's broad grant of immunity must apply before subject matter jurisdiction can be asserted over Russia. The FSIA's noncommercial tort exception does not apply because it provides that foreign sovereigns are liable for claims based on "personal injury or death, or damage to or loss of property, occurring in the United States." 28 U.S.C. § 1605(a)(5) (emphasis added). We have interpreted this language to require that at least one entire tort occur in the United States. See Olsen v. Mexico, 729 F.2d 641, 645-46 (9th Cir.1984). In this case, the Plaintiffs' wrongful death claims arise from the summary executions of their relatives in Russia. Because the killings did not occur "in the United States," the Plaintiffs' wrongful death claims do not fall within the FSIA's noncommercial tort exception. The FSIA therefore precludes subject matter jurisdiction over the wrongful death claims and Russia is entitled to immunity from suit in the United States on those claims.
 
 
 17
 B. Intentional Infliction of Emotional Distress Claims
 
 
 18
 Retroactivity is not an issue with respect to Plaintiffs' intentional infliction of emotional distress claims. The FSIA applies to these claims because some of the alleged tortious acts that caused the emotional distress--the false publicity campaign in the United States--occurred after the FSIA became law in 1976. Thus, applying the FSIA, we must determine whether an exception exists to the general grant of foreign sovereign immunity.
 
 
 19
 The FSIA's noncommercial tort exception applies to the Plaintiffs' emotional distress claims. 28 U.S.C. § 1605(a)(5). We noted in Olsen that § 1605(a)(5)'s plain language merely requires the injury to take place in the United States, not the act or conduct that causes the injury. 729 F.2d at 645. Regardless of the plain language, we explained that § 1605(a)(5)'s legislative history "indicates that 'the tortious act or omission must occur within the jurisdiction of the United States.' " Id. (emphasis added) (citing H.R.Rep. No. 94-1487, 94th Cong., at 21 (1976)). Thus, in Olsen we held that "if plaintiffs allege at least one entire tort occurring in the United States, they may [assert a] claim under § 1605(a)(5)." Id. at 646.
 
 
 20
 In this case, Plaintiffs have alleged at least one entire tort occurring within the United States. Plaintiffs allege that Russia and Soviet news agencies engaged in a publicity campaign in the United States based on the falsehood that the Polish prisoners were killed by the Nazis rather than by the Soviet secret police. Plaintiffs also allege that Russia misled them about the nature of their relatives' deaths and the location of their relatives' remains. Because these alleged tortious acts constitute two "entire torts" occurring in the United States, the noncommercial tort exception to foreign sovereign immunity applies.
 
 
 21
 But Russia is still entitled to immunity if an exception to the noncommercial tort exception applies. With respect to Plaintiffs' emotional distress claims, Russia is entitled to sovereign immunity based on the "libel" exception to the noncommercial tort exception. 28 U.S.C. § 1605(a)(5)(B).
 
 
 22
 Section 1605(a)(5)(B) states that the noncommercial tort exception to sovereign immunity will not apply to "any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights." Id. (emphasis added). Section 1605(a)(5)(B)'s plain language leads us to conclude that the "libel" exception to the noncommercial tort exception applies to Plaintiffs' emotional distress claim. These claims "arise out of" the Soviet Union's misrepresentation and deceit during its disinformation campaign relating to the massacre and the location of the victims' remains.
 
 
 23
 This interpretation of § 1605(a)(5)(B) is supported by examining the analogous provision of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(h). See Gregorian v. Izvestia, 658 F.Supp. 1224, 1233-34 (C.D.Cal.1987) (noting that the exceptions in § 1605(a)(5)(B) mirror the exceptions of FTCA § 2680(h)), aff'd in part and rev'd in part, 871 F.2d 1515 (9th Cir.), cert. denied, 493 U.S. 891 (1989). Both the FTCA and the FSIA's "libel" exception prohibit "any claim arising out of" certain enumerated torts. In interpreting the "arising out of" language in the FTCA, we have held that an emotional distress claim "arises out of" an excluded tort if that tort must be proved for the underlying claim to succeed. See, e.g., Thomas-Lazear v. Federal Bureau of Investigation, 851 F.2d 1202, 1207 (9th Cir.1988) (noting that if government actions that constitute a barred slander claim are essential to an underlying emotional distress claim, then the emotional distress claim is also barred).
 
 
 24
 Because Plaintiffs' emotional distress claims arise out of barred claims--misrepresentation and deceit--Russia is entitled to sovereign immunity as to the Plaintiffs' emotional distress claims.
 
 
 25
 C. Fraud and Deceit, Conspiracy, and Other Claims
 
 
 26
 We also conclude that Russia is entitled to sovereign immunity on Plaintiffs' remaining claims. Plaintiffs alleged claims for fraud and deceit. Because "fraud" is specifically. enumerated in § 1605(a)(5)(B), Russia is immune from suit on these claims.
 
 
 27
 Russia is also entitled to sovereign immunity based on Plaintiffs' conspiracy claim--that Russia conspired to kill their relatives and conceal the truth about the killings. To the extent that the conspiracy arises from the executions, that claim is barred because it is not based on an act "occurring in the United States." 28 U.S.C. § 1605(a)(5). To the extent the conspiracy is based on misrepresentations within the United States about the remains of Plaintiffs' relatives, that claim is barred by the "libel" exception because it arises from Russia's misrepresentation and deceit. Id. § 1605(a)(5)(B).
 
 
 28
 Finally, Plaintiffs' complaint implicitly raises two additional claims. Plaintiffs argue that the Soviet Union "converted" the prisoners' belongings and mishandled the remains of the bodies.[2] Plaintiffs' conversion claim is barred because any conversion of the prisoners' belonging did not occur "in the United States." Id. § 1605(a)(5). Their claim with respect to the decedents' remains is also barred because: (1) any act relating to the prisoners' remains did not act occur within the United States, because the remains are located in Russia, see id., and (2) any misrepresentation about the location and existence of the prisoners' remains that occurred in the United States, is barred by the "libel" exception. See id. § 1605(a)(5)(B).
 
 CONCLUSION
 
 29
 We are sensitive to the grave distress Plaintiffs' relatives have experienced as a result of the events giving rise to this lawsuit. We have struggled long and hard in this case. Nevertheless, our extensive research compels us to conclude that no exception to the FSIA provides the federal courts with subject matter jurisdiction over Plaintiffs' claims. We therefore must conclude that Russia is immune from suit, and affirm the district court's decision.
 
 
 30
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The parties do not contest the Russian Federation's status as a successor to the Soviet Union
 
 
 [2]
 The Second Amended Complaint does not mention decedents' property. It does mention, however, that the Plaintiffs do not have, or know the location of, the remains