**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

EMIL ALPERIN; et al.,

        Plaintiffs - Appellants,

  v.

VATICAN BANK, aka Institute of
Religious Works aka Instituto per le Opere
Di Religione (IOR),

        Defendant - Appellee.

No. 08-16060

D.C. No. 99-cv-04941-MMC

MEMORANDUM [*]

Appeal from the United States District Court
for the Northern District of California
Maxine M. Chesney, District Judge, Presiding

Argued and Submitted December 10, 2009
San Francisco, California

Before: B. FLETCHER, THOMAS and N.R. SMITH, Circuit Judges.

Survivors and descendants of victims of the Holocaust, and associated

organizations (collectively referred to herein as "Alperin"), appeal the dismissal of

their purported class action lawsuit against the Vatican Bank, also known by its

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

official title Istituto per le Opere di Religione (the "IOR").  On a previous appeal, we held that the political question doctrine barred broad allegations of violation of international law but did not bar certain property claims.  *Alperin v. Vatican Bank*, 410 F.3d 532 (9th Cir. 2005).  We are now asked whether the IOR is a foreign sovereign protected by the Foreign Sovereign Immunity Act (the "FSIA"), and if so, whether Alperin's claims fall within the international takings exception or commercial takings exception to the FSIA's jurisdictional bar.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

"The existence of sovereign immunity and subject matter jurisdiction under the [FSIA] are questions of law that [this Court] review[s] de novo." *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1085–86 (9th Cir. 2007) (internal quotation marks and citation omitted) (alteration in original).  A District Court's interpretation of foreign law is also reviewed *de novo*.  *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995).  On a motion to dismiss, the court "assume[s] that [it has] truthful factual allegations before [it]." *Saudi Arabia v. Nelson*, 507 U.S. 349, 351 (1993).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

2

I

The district court did not err in holding that the IOR is an organ of a foreign state entitled to FSIA immunity. In assessing whether an entity is an organ of a foreign state, *see* 28 U.S.C. § 1603(b)(2)*,* we "[t]ak[e] a holistic view" of the defendant, *Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1102 (9th Cir. 2008). In doing so, we examine

> "[1] the circumstances surrounding the entity's creation, [2] the purpose of its activities, [3] its independence from the government, [4] the level of government financial support, [5] its employment policies, and [6] its obligations and privileges under state law. An entity may be an organ of a foreign state even if it has some autonomy from the foreign government."

*Powerex*, 533 F.3d at 1098 (quoting *EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*, 322 F.3d 635, 640 (9th Cir. 2003)) (internal quotation marks omitted).

A showing of organ status may be based exclusively on foreign law. *See, e.g. Gates v. Victor Fine Foods*, 54 F.3d 1457, 1460–64 (9th Cir. 1995) (using Alberta statutes and regulation to determine defendant's organ status). *But see EOTT Energy Operating Ltd. P'ship v. Winterthur Swiss Ins. Co.*, 257 F.3d 992, 999 (9th Cir. 2001) (remanding for "factual inquiry" where record "incomplete[]" and contained "ambiguities"). The defendant bears the burden of establishing a

3

prima facie case of immunity. *Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 306 (9th Cir. 1997).

Through its affidavit showing its status, structure, and role under Vatican law, the IOR made a prima facie case that it is an agency or instrumentality of the Vatican, and thus entitled to FSIA immunity. The affidavit shows that the modern IOR was created by the Pope as a public and independent juridic entity that is responsible for managing assets placed in its care for the purpose of supporting religious or charitable works. The highest administrative level of the IOR is composed of high-ranking government officials all appointed by the Vatican. The IOR has exclusive control over several obligations created and assigned by Vatican law. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 848 (9th Cir. 2000) (emphasizing monopoly over task); *Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect*, 89 F.3d 650, 655 (9th Cir. 1996) (same). And the IOR is immune from suit in Italy as a foreign sovereign. Alperin did not challenge the affidavit or provide a counter-affidavit. Therefore, we conclude that the district court correctly held that the IOR established a prima facie case that it was an organ of a foreign state entitled to FSIA immunity.

Contrary to Alperin's argument, the historical origins and activities of the IOR are not relevant to this inquiry. *Dole Food Co. v. Patrickson,* 538 U.S. 468,

480 (2003) ("[I]nstrumentality status is determined at the time of the filing of the complaint."). Accordingly, this court has not considered evidence pertaining to the IOR's organ status prior to 1999, when the first Complaint was filed. The IOR need not be the Vatican Central Bank for it to have a public purpose. *See Powerex*, 533 F.3d at 1098. Its involvement in commercial affairs does not automatically render the IOR non-governmental. *EIE Guam*, 322 F.3d at 641. Nor is it necessary that the Vatican maintain day-to-day control over the IOR's activities. *Gates*, 54 F.3d at 1461. Notwithstanding the IOR's commercial activities and arms-length supervision by the Vatican, the record, viewed holistically, supports the district court's conclusion that the IOR is an agency or instrumentality of the Vatican.

## II

The district court did not err in holding that the international takings exception does not apply to remove FSIA immunity. Where the defendant sovereign succeeds in "establish[ing] a prima facie case of immunity, the burden of production shifts to the plaintiff to offer evidence that an exception applies." *Phaneuf*, 106 F.3d at 307.

FSIA's international taking exception provides that:

5

A foreign state shall not be immune from the jurisdiction of the courts of the United States . . . in any case . . . (3) in which rights in property taken in violation of international law are in issue and [1] that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or [2] that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

28 U.S.C. § 1605(a).

Of critical importance to any analysis under this exception is that plaintiffs not only must plead a right to property taken in violation of international law—and we do not reach the question of whether they have in this case—but that they must plead a jurisdictional nexus to the United States. Under either prong of § 1605(a)(3), this involves pleading the current status of the property at issue (or any property exchanged for such property)—that it either *is* present in the United States or *is* owned or operated by an agency or instrumentality of the foreign state.

While we recognize that it could be difficult to prove that a fungible article such as the gold alleged to have been taken in this case is currently present in the United States, Alperin did not even make such an allegation in the pleadings. Therefore, assuming without deciding that plaintiffs may meet their burden under the first prong through pleadings about the commercial activities of an agency or instrumentality of a foreign state rather than the foreign state itself, Alperin failed

6

to do so in this case. *Cf. Garb v. Republic of Poland*, 440 F.3d 579 (2d Cir. 2006) (holding that only the first clause of the takings exception applies where the jurisdictional nexus is based on allegations regarding the commercial activity of the Ministry of the Treasury, since the Ministry is the state itself, not an agency or instrumentality). *But see* 28 U.S.C. § 1603(a) ("A 'foreign state' . . . includes . . . an agency or instrumentality of a foreign state . . . .").

Nor, under the second prong of § 1605(a)(3), did Alperin sufficiently plead that the IOR has current ownership of the expropriated property or property exchanged for expropriated property. At most, Alperin asserted that "defendants" (in this multi-defendant case) "retained" some portion of the Ustasha Treasury, after other portions were laundered in the 1940s. They never allege that the expropriated property "retained" by the defendants includes property that properly belongs to the named plaintiffs. This is insufficient where the FSIA requires present ownership of the expropriated property (or any property exchanged for such property).

## III

The district court also did not err in determining that the commercial activity exception does not remove FSIA immunity in this case. A second exception to FSIA is for cases "in which the action is based upon a commercial activity carried

7

on in the United States by the foreign state" or based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

Nor does Alperin's complaint meet either prong of the commercial activities exception. Plaintiffs allege that a different defendant used funds laundered by the IOR to establish publishing houses and other commercial activities in Chicago, and they argue that the IOR was enabled to store gold in the United States and trade it on U.S. markets because its gold collection was enhanced by the Ustasha Treasury. These alleged commercial activities in the United States are too tangentially related to their legal claims to be considered "the basis for [the] suit." *Nelson*, 507 U.S. at 358; *see also Alder v. Fed'l Republic of Nigeria*, 219 F.3d 869, 874–75 (9th Cir. 2000) (analyzing claim based on money-laundering under direct effects prong only). Nor are the effects that Alperin alleges—the cumulative impact of Ustasha gold on the IOR's holdings and on its commercial activities in the United States over a decade later; and the results of another party allegedly investing laundered funds in Chicago—sufficiently direct to fall within this exception. *See Corzo v. Banco Cent. de Reserva del Peru*, 243 F.3d 519, 525 (9th Cir. 2001) (holding that "secondary or incidental results" do not count under direct effects prong).

8

IV

The district court correctly dismissed the complaint.  Given our reasoning, we need not–and do not–reach any other issue raised by the parties.  All motions for judicial notice filed by both parties are **DENIED**.


   **AFFIRMED.**