GOULD, Circuit Judge,
dissenting:
The majority decides that the sovereign immunity of OBB Personenverkehr (“OBB”), a national railway of Austria, defeats at the starting gate a domestic forum for a negligence claim by a United States citizen who bought a Eurail pass in the United States. Sachs, in California, bought a Eurail pass from Rail Pass Experts, a Massachusetts-based sub-agent of the Eurail Group. The Eurail Group markets and sells rail passes worldwide, including within the United States. OBB is a part-owner of the Eurail Group, and the OBB trains carry Eurail customers in Austria. The Eurail pass permitted Sachs to board an OBB train and to sit in an unoccupied seat. Sachs was seriously injured while trying to board an OBB train in Austria. I believe that, for purposes of sovereign immunity, a sensible interpretation of the FSIA permits a domestic forum in which Sachs may assert her negligence or other claims against OBB, that our Ninth Circuit precedent does not prevent this, and that we should follow the general approach of other federal circuits that have decided in similar cases that ticket sales by an agent in the United States invoked the commercial activity exception to sovereign immunity in cases involving common carriers.
I do not believe that Doe v. Holy See, 557 F.3d 1066 (9th Cir.2009) controls the outcome of this appeal. In Holy See, the district court concluded that the FSIA’s commercial activity exception to sovereign immunity did not apply to the Holy See’s activity, and the district court dismissed Doe’s fraud claims alleged under that exception. Id. at 1071. Instead, the district court concluded that the Holy See’s activity fit within the FSIA’s tortious activity exception to sovereign immunity, and the district court denied the Holy See’s motion to dismiss all of Doe’s remaining claims alleged under the tortious activity exception. Id.; see 28 U.S.C. § 1605(a)(2) (commercial activity exception), (a)(5) (tortious activity exception).
The Holy See appealed that decision, and Doe cross-appealed the district court’s order dismissing his fraud claim alleged under the commercial activity exception. Holy See, 557 F.3d at 1071. We declined, however, to consider Doe’s commercial activity-based appeal. Id. at 1074-75. We concluded that we did not have jurisdiction because Doe’s appeal, unlike the Holy See’s appeal, did not fall within the collateral order exception to the final judgment *1032 rule, and “the tort causes of action [that were relevant to the Holy See’s appeal were] not inextricably intertwined with Doe’s other claims.” Id. at 1075. We said:
In other words, here we would be asked to take up the appeal from that grant and reverse the district court’s determination; we would have to reach out and engage in a lengthy disquisition on the commercial activity exception to FSIA, which we neither must nor should do. Thus, we will not consider issues regarding the district court’s grant of immunity under the commercial exception to the FSIA.
Id. at 1076 (emphasis added).
We went on to extend the presumption in favor of separate juridical status at the liability phase, identified by the Supreme Court in First National City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983) (“Bancec ”), to the jurisdiction phase of the FSIA inquiry. Holy See, 557 F.3d at 1079. We did this even though in an earlier case we explained that “[t]he enumerated exceptions to the FSIA provide the exclusive source of subject matter jurisdiction over civil actions brought against foreign states” and that “[questions of liability are addressed by Bancec, which examines the circumstances under which a foreign entity can be held substantively liable for the foreign government’s judgment debt.” Flatow v. Islamic Republic of Iran, 308 F.3d 1065 (9th Cir.2002) (emphasis added).[1]
Because we did not expressly consider the commercial activity exception in Holy See, it is not controlling. Because both Bancec and Flatow deal with separate juridical status for the purposes of liability, neither mandates the majority’s approach to resolving this appeal. I would, instead, follow the decisions of the Second Circuit in Barkanic v. General Administration of Civil Aviation of People’s Republic of China, 822 F.2d 11 (2d Cir.1987) and of the D.C. Circuit in Kirkham v. Société Air France, 429 F.3d 288 (D.C.Cir.2005). The courts in Barkanic and Kirkham expressly considered the commercial activity exception to sovereign immunity under the FSIA in the context of the sale of foreign common carrier tickets in the United States by travel agents. Although there are some distinctions of fact in those cases,[2] I read them to mean in substance *1033 that where a foreign common carrier, operated by a sovereign entity, purposefully sells tickets for use of the carrier’s services overseas through a domestic sales agent, the ticket sale is commercial activity which may be imputed to the foreign common carrier and is sufficient to invoke the commercial activity exception to sovereign immunity under § 1605(a)(2) of the FSIA.
Barkanic and Kirkham are consistent with the plain language of the FSIA, which does not require the limitation to jurisdiction under the commercial activity exception relied on by the majority. Section 1605(a)(2) provides:
A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any ease ... in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.
28 U.S.C. § 1605(a)(2) (emphasis added). “Commercial activity” is defined as “either a regular course of commercial conduct or a particular commercial transaction or act,” id. at § 1603(d), and a “commercial activity carried on in the United States by a foreign state” is defined as “commercial activity carried on by such state and having substantial contact with the United States.” Id. at § 1603(e). The legislative history notes that Congress intended the commercial activity exception to apply to “a broad spectrum of endeavor, from an individual commercial transaction or act to a regular course of commercial conduct.” H.R. Rep. 94-1487 at 6614-15.
Here OBB is a member and part owner of Eurail which targets U.S. consumers, selling thousands of passes each year for use on railways, including on OBB, throughout Europe upon one purchase of a pass. That Eurail does this through sub-agents like Rail Pass Experts[3] in the United States does not change that OBB, through Eurail, regularly engages in the type of commercial activity in the United States that Congress intended to defeat sovereign immunity under the FSIA. Indeed, a primary purpose of the Eurail entity is to market and sell in the United States and around the world Eurail passes good only for passage on OBB and other European railways. Stated another way, OBB knew that the Eurail entity, in which it was part owner, would be marketing passes to people like Sachs in the United States. It knew or should be charged with constructive knowledge that Eurail would use sub-agents like Rail Pass Experts to sell tickets to people like Sachs within the United States. See Phaneuf v. Republic of Indonesia, 106 F.3d 302, 307-08 (9th Cir. *1034 1997) (“Because a foreign state acts through its agents, an agent’s deed which is based on the actual authority of the foreign state constitutes activity ‘of the foreign state’ [for the purpose of the commercial activity exception].”). OBB has empowered its agent, the Eurail Group, to sell passes good for travel on OBB trains, including through sub-agents like Rail Pass Experts within the United States. See id. Moreover, when a U.S. citizen buys a Eurail pass in the United States for passage on OBB and other railways from an agent in the United States, and then is injured through allegedly improper activity of the foreign railway carrier, like OBB in Europe, such a person should be able to have a forum for suit within the United States so far as sovereign immunity is concerned.
I also believe that Sachs’ action is sufficiently “based upon” OBB’s commercial activity as is required by the FSIA. 28 U.S.C. § 1605(a)(2). In Saudi Arabia v. Nelson, 507 U.S. 349, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993), the Supreme Court explained that within the context of the FSIA, “the phrase [‘based upon’] is read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case.” Id. at 357, 113 S.Ct. 1471. Indeed, “[t]he only reasonable reading of [‘based upon’] calls for something more than a mere connection with, or relation to, commercial activity.” Id. at 358,113 S.Ct. 1471.
Here, Sachs’ first claim for relief is based on negligence. She alleges that OBB, as a “common carrier for hire,” breached its duty of care when Sachs was injured boarding the OBB train in Innsbruck, Austria. This duty arose from the sale of the ticket for passage on OBB trains, the commercial activity identified by Sachs. See Restatement (Third) of Torts § 40(b) (2012) (“Special relationships giving rise to the duty [of reasonable care] ... include a common carrier with its passengers.”). Thus, the commercial activity, on which Sachs argues that the commercial activity exception to sovereign immunity should apply here is a necessary element (i.e., establishment of the duty of reasonable care) that, if proven, would entitle Sachs to relief on a least some part of her action against OBB. See Nelson, 507 U.S. at 358 n. 4, 113 S.Ct. 1471 (“We do not mean to suggest that the first clause of § 1605(a)(2) necessarily requires that each and every element of a claim be commercial activity by a foreign state.”).
A judgment in favor of Sachs is also consistent with our decision in Sun v. Taiwan, 201 F.3d 1105 (9th Cir.2000). In that case, we considered whether the appellants could bring a wrongful death action against Taiwan under the commercial activity exception to sovereign immunity under the FSIA after their son drowned on a Taiwanese beach during a cultural tour of that country. Before the district court, appellants only alleged “a negligent failure to warn and failure to exercise reasonable supervision.” Id. at 1109. We clarified that the phrase “based upon ... requires a nexus between the action and the commercial activity.” Id. We then reasoned that although Taiwan’s operation of the tour was commercial activity within the meaning of the FSIA, id. at 1108-09, only “administrative promotion and application management took place in the United States.” Id. at 1110. Specifically, we said that the basis for the Suns’ claims of negligent supervision and failure to warn claims lay in the sovereign’s alleged conduct in Taiwan, on the Taiwanese beach, and had no nexus with the admitted commercial activity in the United States; namely the promotion and sales of tickets for the tour. Id. Because “[t]he only conduct relevant to the action was failure to take reasonable care in allowing the students to swim and *1035 failure to supervise them,” all of which took place in Taiwan, we concluded that the Suns were unable to show a nexus between the action and the commercial activity within the United States.[4] Id.
Here, by contrast, Sachs’ negligence action alleges that OBB breached its common-carrier duty of reasonable care in the operation of its trains, causing her physical harm. As stated above, this duty originates in the commercial activity that Sachs alleges, namely OBB’s sale of the train ticket, through its participation in Eurail, which occurred in the United States. I would conclude that there is a sufficient nexus between Sachs’ action and the commercial activity. Accord Barkanic, 822 F.2d at 13 (concluding that “there is a sufficient nexus between the airplane crash and [the sale of the airline ticket] carried on by [the sovereign] in this country”).
Because I believe (1) that the Eurail Group, through ticket sales by its sub-agent Rail Pass Experts, engaged in commercial activity within the United States, and that this activity is fairly attributed to OBB as part-owner of Eurail, carrying its customers in Austria, and (2) that there is a sufficient nexus between that commercial activity and Sachs’ action because the ticket sale gave rise to the common carrier duty of reasonable care allegedly breached, I would hold that Sachs has alleged facts sufficient to satisfy the commercial activity exception to sovereign immunity under the FSIA. I respectfully dissent.

. Flatow also does not preclude a ruling in favor of Sachs because our inquiry there, like the Court's in Bancec, centered on the question of liability, and not jurisdiction, as permitted under the commercial activity exception to sovereign immunity under the FSIA. See id. at 1069 (“The distinction between liability and jurisdiction is crucial to our resolution of this case.”). We declined to permit the appellant to levy against real property owned by Bank Saderat Iran ("BSI”), a nationalized bank, in order to satisfy a default judgment against the Republic of Iran. Id. at 1066. Relying on Bancec, we concluded that Flatow did not allege facts sufficient to overcome Bancec ‘s presumption of separate juridical status at the liability phase. Id. at 1074. In short, under the presumption of separate juridical status for the purposes of liability, BSI could not be held liable for the Republic of Iran's obligation to Flatow.

. In Kirkham, Kirkham bought an airline ticket from a travel agent in Washington, D.C. for travel on Air France in Europe. Kirkham, 429 F.3d at 290. Kirkham was injured in a Paris airport while changing planes, and she sued Air France, whose majority shareholder is the Republic of France. Id. In Barkanic, Barkanic bought a ticket to fly on CAAC, an agent of the People's Republic of China, from a Pan Am-affiliated travel agent in Washington, D.C. Barkanic, 822 F.2d at 12. Pan Am and CAAC had previously entered into an agency agreement in which Pan Am was authorized to appoint travel agents to sell seats on CAAC flights. Id. Barkanic was killed when his CAAC flight crashed in China, and *1033 his survivors filed a wrongful death suit against CAAC. Id.
In neither case was the issue of whether the commercial activity (i.e., the sale of the airline ticket in the U.S. by a travel agent) could be imputed to the sovereign raised. Instead the sale of the ticket was attributed to both foreign carriers without dispute between the parties and without suggestion from either the Second Circuit or the D.C. Circuit that to do so was inconsistent with the FSIA’s commercial activity exception.

. Before the district court, OBB argued that Rail Pass Experts is not an authorized agent of OBB. OBB acknowledges, however, that OBB is a member of the Eurail Group and that "Rail Pass Experts may be, presumably, a subagent of a general sales agent accredited by The Eurail group and, therefore, able to sell Eurail passes (likely at higher rates than those available from Eurail directly).”

. The Suns then changed their theory of liability on appeal, arguing that under California law, "Taiwan was under an affirmative duty to exercise reasonable care by disclosing known information concerning prospective dangers on the tour and by not misleading prospective participants,” while promoting the tour in the United States. Id. We then remanded the case to the district court "to review the Suns’ claim first in order to determine whether, as currently cast, it is based on commercial activity that took place in the United States.” Id.